RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0492p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

FIGIRI SHKULAKU-PURBALLORI,

*Petitioner,*

*v.*

No. 06-4062

MICHAEL B. MUKASEY,

*Respondent.*

On Appeal from the
Board of Immigration Appeals.
No. A79 042 930.

Submitted: October 23, 2007

Decided and Filed: December 19, 2007

Before: MARTIN, GIBBONS, and SUTTON, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:** Andrea J. Ferrara, LAW OFFICES OF ANDREA J. FERRARA, Eastpointe, Michigan, for Petitioner. John F. Salan, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Respondent.

---

**OPINION**

---

BOYCE F. MARTIN, JR., Circuit Judge. Figiri Shkulaku-Purballori petitions this Court for review of the decision by the Board of Immigration Appeals denying his request for asylum, or, in the alternative, Convention Against Torture relief or withholding of removal. Because we are without jurisdiction to review the denial of Shkulaku's asylum application, we DISMISS that part of his petition, and because he cannot meet the high bar for qualification for withholding of removal, we AFFIRM the BIA's decision denying his claim.

I.

Figiri Shkulaku-Purballori is a native and citizen of Albania. He joined the Albanian Democratic Party in 1991 and switched his allegiance to the Balli Kombetar Party in 1993. He testified that he was arrested on five different occasions since 1994. He claims that during these arrests the police hit, kicked, and beat him around the head and stomach, and told him to go back to the Democratic Party. He says that in 1997 he returned to the "right wing" of the Democratic Party, but purportedly because of his activities organizing rallies, he was again arrested and beaten and kicked until he fainted. He alleges that in 1998 he was again taken into custody, and the police

1

used enough force to break Shkulaku's little finger on his right hand. Later that year the police took him before a judge, who released Shkulaku for lack of evidence. Fortuitously, this judge was in the United States at the time of Shkulaku's removal hearing and testified about the abuse that Shkulaku suffered at the hands of the police.

Shkulaku testified that in 1999 and 2000 he was an active participant in the Democratic Party and an election monitor. He says he was arrested and beaten in both 2000 and 2001 after participating in rallies in support of a right-wing party coalition. The final incident described by Shkulaku was in 2001, when while driving a van for a construction company, he was shot at by unknown individuals. He asserts that he left Albania following this incident and went to Greece, France, the Dominican Republic, and Mexico. He then swam across the border into Texas on or about August 27, 2001, and was apprehended. He applied to change venues from Texas to Michigan on February 28, 2002, and this application was granted the same day. In Michigan, Shkulaku's case was set to be heard by an immigration judge on July 17, but on June 18 the judge recused herself and the matter was assigned to another judge. The first Master Calendar Hearing available was on August 28, 2002, one year and one day after Shkulaku entered the country. He filed for asylum at that hearing, but the judge dismissed the application as untimely. At a removal hearing on February 28, 2005, an immigration judge denied Shkulaku's claims for relief based on withholding of removal and the Convention Against Torture, finding that his testimony was not credible and that due to changed conditions in Albania, he could not demonstrate a reasonable fear of future persecution. The Board of Immigration Appeals affirmed the immigration judge's decision on July 10, 2006, and Shkulaku filed a timely petition for review of the decision of the Board.

## II.

This Court will reverse the Board's determination that an alien is not eligible for admission to the United States only if it is "manifestly contrary to law." 8 U.S.C. § 1252(b)(4)(C). To reverse the BIA's determination, we must find that the evidence "not only supports a contrary conclusion, but indeed compels it." *Yu v. Ashcroft*, 364 F.3d 700, 702-03 (6th Cir. 2004) (internal quotation marks omitted). We review the Board's decision on a request for withholding of removal under the same standard regardless of whether the request was made pursuant to the Immigration and Naturalization Act or the Convention Against Torture. *Castellano-Chacon v. INS*, 341 F.3d 533, 544 (6th Cir. 2003).

### 1) The Asylum Claim

An alien must file an asylum application within one year of arriving in the United States in order to be eligible for asylum. 8 U.S.C. § 1158(a)(2)(B). An exception to this rule can be made if the alien demonstrates either the existence of changed circumstances which materially affect the applicant's eligibility for asylum, or extraordinary circumstances relating to the delay in filing an application within the one-year period. *Id.* § 1158(a)(2)(D). Shkulaku contends, under the extraordinary circumstances exception, that the Board of Immigration Appeals erred in finding that the asylum application had not been timely filed. Unfortunately, this issue is jurisdictionally barred from review by this Court. In *Almuhtaseb v. Gonzales*, 453 F.3d 743 (6th Cir. 2006), we held that under § 106(a)(1)(A)(iii) of the REAL ID Act of 2005, 8 U.S.C. § 1252(a)(2)(D), we will review asylum applications denied for untimeliness only when the appeal seeks review of "constitutional claims or matters of statutory construction," not when the question is "discretionary" or "factual." 453 F.3d at 748.

The Sixth Circuit has evaluated claims of "extraordinary circumstances" at least twice under the *Almuhtaseb* framework. In *Amir v. Gonzales*, the panel concluded that it could not review Amir's claim that his asylum petition was untimely because of extraordinary circumstances. 467 F.3d 921, 924 (6th Cir. 2006). Amir's claim, explained the court, centered on an issue regarding the

admissibility of particular evidence, which the court explained was neither a constitutional question nor a question of statutory interpretation. *Id.* (applying the *Almuhtaseb* framework). In *Soe v. Gonzales*, the factual determination centered on Soe's extraordinary circumstance, namely his complete isolation from society, and how that isolation bore upon the timing of his asylum application. 227 Fed. App'x 468, 470 (6th Cir. April 9, 2007). The panel denied his petition for lack of jurisdiction, finding that "[t]he timeliness of an alien's asylum application is usually a question of fact." *Id.*

In the instant case, Shkulaku argues that the cause of his late filing was not his own fault, but the fault of scheduling at the immigration court in Detroit. He also claims that he thought that an asylum application had to be filed in front of a judge. These issues are "predominantly factual," rather than constitutional claims or matters of statutory construction under the *Almuhtaseb* framework. 341 F.3d at 748. Therefore the jurisdictional bar to review of the existence of extraordinary circumstances prevents our addressing this issue.

### 2) *Withholding of Removal Under the Immigration and Nationality Act and the Convention Against Torture*

There are two provisions under which an alien can request withholding of removal: § 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), or the Convention Against Torture. *See Castellano-Chacon*, 341 F.3d at 544-45, 551-52. The INA withholding of removal provision "corresponds to the non-refoulement obligation in Article 33 of the Refugee Convention, prohibiting the deportation or removal of anyone whose life or freedom would be threatened in his or her home country on account of one of the same five grounds necessary for asylum (race, religion, nationality, membership in a particular social group, or political opinion)." *Id.* at 545. To prevail on a petition for withholding of removal under the INA, an alien must show that it is "more likely than not" that he would be subject to persecution on the basis of one of these five grounds were he removed from this country. *Liti v. Gonzales*, 411 F.3d 631, 640-41 (6th Cir. 2005) (quoting 8 C.F.R. § 1208.16(b)(2)). By contrast, to be eligible for withholding of removal under the Convention, "the applicant bears the burden of establishing 'it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Id.* at 641 (quoting 8 C.F.R. § 1208.16(c)(2)).

With regard to the Convention Against Torture claim, we find that the past acts of violence Shkulaku endured in Albania do not descend to the level of "an extreme form of cruel and inhuman treatment," 8 C.F.R. § 1208.18(a)(2), and therefore do not constitute past torture. As for withholding of removal, Shkulaku has not demonstrated that it is more likely than not that he will suffer persecution should he return to Albania. The judge found that conditions in Albania have changed considerably since Shkulaku left the country in 2001. According to the State Department Profile of Asylum Claims and Country Conditions for Albania, dated March 2004, the Democratic Party resumed its participation in the Parliament in 2002, and the municipal elections in October 2003 were considered the most transparent in Albania's short democratic history, with no police interference. *See generally Mullai v. Ashcroft*, 385 F.3d at 638 (holding that an immigration judge may rely on State Department reports to conclude that a change in country conditions was sufficient to rebut the presumption of well-founded fear); *but see Koliada v. INS,* 259 F.3d 482, 487 (6th Cir. 2001) (State Department reports may be problematic sources on which to rely). The judge quoted the profile as stating:

> [T]here is no indication that the Socialist Party, either through its own organization or through government authorities, is engaged in a pattern of repression or violent behavior against its opponents . . . a review of recent reports by international observers and human rights organizations turned up no mention of such occurrences, suggesting that there has not been a pattern of such behavior in the post-1997 period.

Shkulaku does not dispute these reports, saying only that the State Department reports "do not reflect every incident" within a country, and that this Court should consider that Albania has a long history of political instability. This is not sufficient under § 241(b)(3) of the INA or 8 U.S.C. § 1231(b)(3). Shkulaku has the burden of "present[ing] evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Perkovic v. INS*, 33 F.3d 615, 621 (6th Cir. 1994). He has failed to do so.

In affirming, we do not reach the issue of the immigration judge's credibility determinations. We note, however, that the record suggests that the immigration judge was combative in dealing with Shkulaku, Shkulaku's counsel, and the witness. Moreover, the immigration judge engaged in questioning Shkulaku about his religion, a topic irrelevant to his claim, before permitting his counsel to question him.[1] Such demeanor does not foster confidence that a judicial officer is an impartial arbiter.

### III.

Because we are without jurisdiction to review the denial of Shkulaku's asylum application, we DISMISS that part of his petition. Because Shkulaku has failed to show that he is "more likely than not" to face persecution or torture were he to return to Albania, we AFFIRM the decision of the BIA to deny withholding of removal.

---

[1] The transcript reads as follows (Joint App'x at 84):

| Court: | Sir, what is your religion? |
| Shkulaku: | I believe in God? |
| C: | Are you Muslim, are you Muslim, Christian? |
| S: | My father belongs to the Muslim belief and my mother is a Christian. |
| C: | What do you consider yourself, sir? |
| S: | I was raised, I was raised and grew up, it was (indiscernible) the church or mosques, without believing them. |
| C: | What do you consider yourself today, sir? |
| S: | God's person. |
| C: | Sir, do you consider yourself Muslim? |
| S: | I've never been to the mosque or a church. |
| C: | Do you consider yourself Muslim, sir, yes or no? |
| S: | No. |
| C: | All right. |