**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0413n.06
Filed: July 10, 2008

**No. 06-3884**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ALMA VUSHAJ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF AN |
| | ) | ORDER OF THE BOARD OF |
| MICHAEL B. MUKASEY, | ) | IMMIGRATION APPEALS |
| Attorney General of the United States, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Before:  MARTIN and SUTTON, Circuit Judges; OBERDORFER, District Judge.[1]

OBERDORFER, District Judge.   Petitioner Alma Vushaj (Kroni), a native and citizen of Albania, seeks review of the June 6, 2006, decision of the Board of Immigration Appeals (the "Board"), affirming the Immigration Judge's denial of her application for asylum pursuant to 8 U.S.C. § 1158(a), withholding of removal pursuant to § 241(b)(3) of the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture.   For the reasons stated below, we DENY her petition for review.

**I. BACKGROUND**

**A. Facts**

---

[1]The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

In December 1992, at the age of 17, Vushaj left Albania and came to the United States with her then-husband. Vushaj entered the United States on a false passport (which her husband had procured for her without her knowledge) and was immediately placed in exclusion proceedings. She conceded her inadmissibility, but filed an application for asylum and/or withholding of removal based on political persecution. Vushaj claimed past persecution and a fear of future persecution based on her and her family's political activities in support of the Democratic Party of Albania.

After a hearing on July 27, 1994, an Immigration Judge denied her application. On August 31, 2001, the Board of Immigration Appeals (the "Board") reversed and remanded for a new hearing due to translation problems. In 2002, Vushaj supplemented her application and added a claim for protection under the Convention Against Torture.

Vushaj's second hearing, via video conference and before a different Immigration Judge, occurred on February 25, 2005. By that time, Vushaj had divorced her first husband, remarried, given birth to a son (in 2000), who is a United States citizen, and separated from her second husband. Before the hearing, the parties "stipulated and agreed on the record that the facts stated by [Vushaj] in her asylum applications [were] true and correct" and that, based on those facts, Vushaj had suffered "past persecution" based on her political beliefs. JA 30. As a result, Vushaj was entitled to a regulatory presumption that she had a "well-founded fear of persecution" in the future. 8 C.F.R. § 208.13(b)(1). The government sought to rebut the presumption by showing "a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in [her] country of nationality." *Id.* § 208.13(b)(1)(i)(A).

2

In the years between 1992 and 2005, the political situation in Albania evolved. In 1992 the Democratic Party won national elections. After an economic collapse in 1997 and a period of anarchy, the Socialist Party came to power. Post-Communism, the Democratic Party and the Socialist Party have been the two primary parties. At the hearing in 2005, Vushaj proffered her own testimony, as well as testimony from her father, Pashko Kroni, her uncle, Alfons Grishaj, and an expert witness, Bernd Fischer, Ph.D. Each testified that conditions in Albania, albeit improved since Vushaj's departure in 1992, were still such that given her and her family's past and current support of the Democratic Party, her fear of future persecution was well-founded. The government offered no witnesses of it own, but relied on its cross-examination of Vushaj's witnesses and a few documents to rebut the presumption. The documents submitted by the government included: (1) the United States Department of State's 2003 Country Reports on Human Rights Practices for Albania (the "2003 Country Report"); (2) the United States Department of State's 2001 and 2004 Profile of Asylum Claims and Country Conditions for Albania (the "2001 and 2004 Profiles"); and (3) an unaddressed, unsigned, and undated letter from Vushaj, stating that she had a six-month old son (a copy of his birth certificate was attached to the letter) and asking for help with her papers so that she could "visit and go back to my country Albania and show my son where he is from." JA 110. Although the letter was undated, her son had been born on December 29, 2000, indicating that the letter was written in the summer of 2001. The government represented that it discovered the letter in an Alien Relative Status Petition file at the Department of Homeland Security. Vushaj challenged the admissibility of the letter, but the Immigration Judge admitted it, ruling that "it was apparent . . . that the letter was the handiwork of [Vushaj] and sent to the [Department of Homeland Security]

3

in an effort to expedite the processing of the relative petition so she could return to Albania with her son." JA 36. He rejected Vushaj's suggestion that her second husband might have authored the letter as "unconvincing and not credible." *Id.*

On February 28, 2005, the Immigration Judge denied all relief. He found that the government had "presented sufficient evidence to rebut the Applicant's regulatory presumption of a well-founded fear of future persecution based upon changed circumstances." JA 36. Vushaj's statement in the 2001 letter that she wanted to take her infant son to Albania to visit family, the Immigration Judge opined, "per se would rebut the Applicant's regulatory presumption of a well-founded fear" because it "clearly indicates that the Applicant never had a fear in returning to Albania after the birth of her US citizen son while the [Socialist Party] was in control and after her parents and other relatives left Albania and were granted asylum in the US." *Id.* In addition, he found that the 2003 Country Report and the 2001 and 2004 Profiles established that any danger to Vushaj in returning to Albania would be the result of the fact that "lawlessness and the proliferation of illegal guns are prevalent, thereby fostering high crime and violence," not "mere membership in the [Democratic Party]" which was "operating openly, visibly and legally." *Id.* Having found that Vushaj was unable to establish a claim for asylum, he also found that she "failed to meet the higher burden of proof for withholding of removal." *Id.* Finally, the Immigration Judge denied relief under the Convention against Torture, finding that Vushaj "failed to demonstrate credible evidence of any past torture, or that it is more likely than not that [she] will suffer torture upon her return." *Id.*

Vushaj appealed the Immigration Judge's decision to the Board of Immigration Appeals. On June 6, 2006, the Board affirmed in a brief order. Its only substantive comment was that it

4

found "no error in the determination that, although the applicant may have established prior persecution in Albania, significant changes have occurred in that country that have rebutted the presumption that she has a well-founded fear of future persecution." JA 5.

Vushaj filed the pending petition for review.

## II. ANALYSIS

### A. Standard of Review

Where, as here, the Board adopts the Immigration Judge's decision with additional commentary, we review the decision of the Immigration Judge, as supplemented by the Board, as the final administrative order. *See Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007); *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005). We review questions of law, including questions of due process violations, de novo. *See Maypouya v. Gonzales*, 487 F.3d 396, 405 (6th Cir. 2007); *Ali v. Ashcroft*, 366 F.3d 407, 409 (6th Cir. 2004). We will affirm the Immigration Judge's factual findings, including the determination that the petitioner failed to establish eligibility for asylum due to a fundamental change in circumstances, if substantial evidence supports such determinations. *See Ceraj*, 511 F.3d at 588. Under this standard, we will reverse a factual determination of the Immigration Judge only if "the evidence not only supports a contrary conclusion, but compels it." *Id.* (internal quotation marks and emphasis omitted).

### B. Vushaj's Claim for Asylum

An asylum applicant bears the burden of establishing that he or she is a "refugee" who is eligible for asylum. 8 U.S.C. § 1158(b)(1). A refugee is an alien who is unable or unwilling to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* §

1101(a)(42)(A)). "A well-founded fear of persecution does not require the applicant to show that he probably will be persecuted if he is deported; 'one can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place.'" *Perkovic v. INS*, 33 F.3d 615, 621 (6th Cir.1994) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987)).

A showing of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). The government may rebut this presumption by establishing by a preponderance of the evidence that there is "a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality." *Id*. § 208.13(b)(1)(i)(A). As noted above, the sole issue before the Immigration Judge and the Board with respect to Vushaj's claim for asylum was whether the government rebutted the presumption that Vushaj had a "well-founded fear of [future] persecution." The Immigration Judge and the Board concluded that it did. Vushaj challenges this finding on due process grounds and as not supported by substantial evidence.

1.      **Due Process Arguments**

Vushaj's first due process argument is that both the Immigration Judge and the Board applied the wrong legal standard in evaluating her asylum claim. Specifically, she contends that each failed to decide whether there had been a "*fundamental change* in circumstances," *id*. § 208.13(b)(1)(i)(A) (emphasis added), so as to rebut the presumption of a well-founded fear of future persecution. Rather, she argues, each applied a less stringent test. In the Immigration Judge's opinion, she points to the following sentence as evidence that the wrong legal standard was applied: "The [Department of Homeland Security] argues, however, that there has been a

6

*substantial* change in country conditions and circumstances that adequately rebuts the regulatory presumption of a well-founded fear of persecution . . . ." JA 35 (emphasis added). And in the Board's decision, she points to its statement that: "*significant* changes have occurred in that country that have rebutted the presumption that she has a well-founded fear of future persecution." JA 5 (emphasis added).

Vushaj's argument is not persuasive. First, the Immigration Judge uses the term "substantial" merely to describe the government's position, not to set forth the applicable legal standard. Moreover, although significant and substantial are not synonyms for fundamental, fundamental changes can certainly also be significant or substantial. Finally, there is nothing in either the Immigration Judge's opinion or the Board's order to suggest that the failure to use the word "fundamental" was based on a misunderstanding of the standard that applied.

Vushaj's second due process argument is that the Board did not give the Immigration Judge's order the meaningful review which due process requires. She argues that the Board's two-paragraph decision, consisting of only a brief procedural history, a statement that it affirmed the Immigration Judge's decision with a citation to its own decision in *In re Burbano*, 20 I & N Dec. 872, 874 (BIA 1994), and one substantive statement agreeing with the Immigration Judge's finding that the changes in Albania rebutted the presumption of a well-founded fear of future persecution, was inadequate to satisfy due process. This argument is foreclosed by controlling precedent. *See Gishta v. Gonzales*, 404 F.3d 972, 980 (6th Cir. 2005). In *Gishta*, as in the present case, the Board did not invoke its authority to affirm without opinion, *see* 8 C.F.R. § 1003.1(e)(4), but rather exercised its authority to "issue a brief order affirming, modifying, or remanding the decision under review," *see* 8 C.F.R. § 1003.1(e)(5). The Board's decision in

*Gishta*, like its decision in the present case, included a citation to *In re Burbano* and a brief statement addressing only one aspect of the Immigration Judge's decision. In considering whether the Board thereby violated the petitioners' due process rights, the Sixth Circuit held:

> The board's independent review of the case is demonstrated by its citation of *In re Burbano*, 20 I. & N. Dec. 872 (BIA 1994), which states that a brief decision affirming the immigration judge's decision does not mean that the board did not exercise its independent review authority over the case, but rather the board adopts or affirms the immigration judge's decision when it is "in agreement with the reasoning and result of that decision." *Id.* at 874. [Moreover,] the board's specific finding that the Gishtas' inadequate interpretation argument failed for lack of prejudice and provided no basis for reversing the immigration judge's decision also demonstrates that the board independently reviewed the case.

*Gishta*, 404 F.3d at 980. Accordingly, Vushaj's second due process argument fails.

### 2. Substantial Evidence

Vushaj also argues that the decision to deny her asylum – based on the finding that there had been a "fundamental change in circumstances such that [she] no longer has a well-founded fear of persecution," 8 C.F.R. 208.13(b)(i)(A) – was not based on substantial evidence. She faults the Immigration Judge for relying too heavily on the 2003 Country Report and the 2001 and 2004 Profiles, for admitting the 2001 letter into evidence, and for not fully crediting the hearing testimony, particularly the testimony of the expert witness. However, given the record before us, we cannot say that it compels a contrary conclusion.

Vushaj's claim of political persecution is based on her and her family's affiliation with and activities on behalf of the Democratic Party of Albania. However, the situation in Albania today, as evidenced by the 2003 Country Report, the 2001 and 2004 Profiles, and, even to some extent, the testimony at the hearing, is much different (and greatly improved) from when Vushaj left in 1992. Although violence and organized crime remain problems, affiliation with the

8

Democratic Party no longer leads to persecution.  Notably, in 2002, "the Democratic Party resumed its participation in the Parliament," and "the municipal elections in October 2003 were considered the most transparent in Albania's short democratic history, with no police interference." *Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 503 (6th Cir. 2007) (citing 2004 Profile).  Although this court has acknowledged that reports issued by the United States Department of State "may be problematic sources on which to rely," *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004), such reports are nonetheless "generally the best source of information on conditions in foreign nations," *id.* (internal quotation marks omitted).   Based on these reports, and the lack of any truly contradictory testimony, we conclude that substantial evidence supports the finding that there has been a "fundamental change in circumstances" such that Vushaj does not have a well-founded fear of persecution based on affiliation with the Democratic Party.  *See also Ramaj v. Gonzales*, 466 F.3d 520, 531 (6th Cir. 2006); *Macotaj v. Gonzales*, 424 F.3d 464, 465 (6th Cir. 2005); *Liti v. Gonzales*, 411 F.3d 631, 640 (6th Cir. 2005).  Inasmuch as the denial of asylum is supported by substantial evidence without considering the 2001 letter, any error on the admissibility of the letter is harmless.

C.      **Withholding of Removal**

Vushaj also challenges the denial of her request for withholding of removal under the INA.[2]   In order to be eligible for withholding of removal under the INA, an applicant must "establish that his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political

---

[2]Vushaj does not challenge the denial of her request for protection under the Convention Against Torture.

opinion." 8 C.F.R. § 208.16(b). As with a claim for asylum, past persecution gives rise to a rebuttable presumption "that the applicant's life or freedom would be threatened in the future in the country of removal on the basis of the original claim, " but the "presumption may be rebutted if an asylum officer or immigration judge finds by a preponderance of the evidence" that "[t]here has been a fundamental change in circumstances such that the applicant's life or freedom would not be threatened on account of any of the five grounds mentioned in this paragraph upon the applicant's removal to that country." *Id*. § 208.16(b)(1)(i).

The standard for withholding of removal is more stringent than the standard for asylum. *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004) (citing *INS v. Stevic*, 467 U.S. 407, 413 (1984)). Accordingly, our decision that substantial evidence supports the denial of Vushaj's asylum claim renders her "automatically incapable of qualifying for withholding of removal." *Ndrecaj v. Mukasey*, 522 F.3d 667, 677 (6th Cir. 2008); *see also Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005).

## III. CONCLUSION

For all of the reasons set forth above, we DENY Vushaj's petition for review.