NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0620n.06
Filed: October 15, 2008

No. 07-3786

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

NELSON HERRERA FLORES,                    )
                                          )
    Petitioner-Appellant,                 )         ON PETITION FOR REVIEW
                                          )         OF AN ORDER OF THE
    v.                                    )         BOARD OF IMMIGRATION
                                          )         APPEALS
MICHAEL B. MUKASEY,                       )
United States Attorney General,           )
                                          )
    Respondent-Appellee.                  )
_____   )


BEFORE: CLAY and GRIFFIN, Circuit Judges; and STAFFORD, Senior District Judge.[*]

GRIFFIN, Circuit Judge.

Petitioner Nelson Herrera Flores appeals an order of the Board of Immigration Appeals ("BIA") affirming an immigration judge's ("IJ") denial of his requests for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").[1] Because petitioner failed to exhaust his administrative remedies on all issues raised in this appeal by not asserting them before the IJ or BIA, we deny the petition for lack of jurisdiction.

_____

[*]The Honorable William H. Stafford, Jr., Senior United States District Judge for the Northern District of Florida, sitting by designation.

[1]United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 1465 U.N.T.S. 85, G.A. Res. 39/46, U.N. GAOR 39th Sess., Supp. No. 51 at 197, U.N. Doc. A/39/51 (1984); *see also* implementing regulations at 8 C.F.R. § 1208.1 *et seq*.

I.

Petitioner Nelson Herrera Flores is a 28-year-old native and citizen of El Salvador, who resides in Ohio with his U.S. citizen wife, Lydia, and her minor children. In early November 2000, petitioner entered the United States illegally, not having been admitted or paroled after inspection by an immigration officer.

On November 7, 2000, the former Immigration and Naturalization Service ("INS") apprehended petitioner, along with approximately thirty other undocumented aliens, in Phoenix, Arizona. INS initiated removal proceedings against petitioner and served him with a Notice to Appear. Petitioner posted bond, and INS released him to the custody of his uncle, Jose Musto. Petitioner did not appear for his removal hearing.

On August 9, 2002, petitioner walked into the Cleveland District Office of the then-INS. He conveyed to the immigration agent that he had not appeared for the previously scheduled removal proceedings in 2000 because he had not received a court date in the mail. He also claimed to have hired an attorney in February 2001 to file an application on his behalf for Temporary Protected Status ("TPS"). Petitioner, however, produced no evidence that the TPS application had been filed, and the immigration agent found no record of a pending TPS application. Accordingly, INS issued a Notice to Appear, charging that petitioner was removable under INA § 212(a)(6)(A)(I) as an illegal entrant or alien present in the United States without having been admitted or paroled.

On December 6, 2002, petitioner appeared before an immigration judge and conceded the charge of removability in the Notice to Appear. Petitioner again claimed that he had applied for TPS in 2001.

Petitioner applied for TPS on May 23, 2003, indicating on the application that it was his first application for TPS. Attorney Elizabeth H. Ryser filed the application on petitioner's behalf and continued to represent petitioner in proceedings before the immigration court and the BIA until it entered its final order affirming the IJ's decision on May 18, 2007.

On May 4, 2005, petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal. In his application, petitioner conceded that he was filing the application more than one year after his last arrival in the United States but justified the delay on the ground that he had unsuccessfully applied for TPS and that "attempted filing" of the request for TPS "delayed [his] attempt to file for asylum." As grounds for requesting asylum or withholding of removal, petitioner explained that gang members in El Salvador had threatened to kill him unless he joined their gangs, that he left El Salvador because he did not want to join a gang or be killed, and that the government in El Salvador cannot control the gangs.

On January 17, 2006, the IJ held a hearing on the charge of removability and petitioner's application for asylum and withholding of removal. At the hearing, petitioner testified that he came to the United States "[b]ecause [he] was afraid of the gangs and they asked [him] to participate and [he] didn't want to participate in them and they threatened [him]." According to petitioner, he could not escape the gangs in El Salvador because "they are all over the place." When asked why gangs

might specifically target him, petitioner responded that the gangs "want all the young kids[,] the youth[,] to join them." Petitioner testified that he complained one time to the police, in 1995, that a gang member had attempted to recruit him but that the police failed to respond. According to petitioner, "it's all about the money" in El Salvador, and the police "don't do anything to the gangs."

Petitioner conceded that although a gang member had attempted to recruit him in 1995, he waited five years before leaving El Salvador for the United States. However, "[d]uring that time it was very difficult for [him] . . .[,]" and he "always lived in fear . . . ." He did not personally know any of the gang members who allegedly threatened him. Gang members approached him more than ten, but fewer than twenty, times in their efforts to recruit him. In 1998, gang members "gave [petitioner] an ultimatum that if [he] did not join them then they would kill [him]." However, "nothing happened to [him]" between 1998 and November 2000, when petitioner left El Salvador for the United States. He also conceded that he was not a member of any political organization.

Following petitioner's testimony, the IJ announced that he had received a report from the State Department dated June 16, 2005. When Attorney Ryser responded that she had not received a copy of the report, the IJ stated that he would fax her a copy of the report and that she could obtain the report during recess. Ryser thanked the judge.

Two witnesses testified on petitioner's behalf, Jose Arento Musto and Gladys Jobnovic. Musto, petitioner's uncle by marriage, testified that petitioner resided with him following petitioner's release from detention in Arizona in November 2000. According to Musto, petitioner and his mother conveyed to Musto that petitioner had been threatened by gangs in El Salvador. However, Musto

had not lived in El Salvador since 1980, and gangs did not exist there at that time. Musto has not visited El Salvador since 2001.

Gladys Jobnovic testified that she has known petitioner for about five years, that petitioner is a friend, and that "he always comes to my house and [we] you know eat together and things like that." Jobnovic visited El Salvador two years prior to her testimony and stated that she was robbed in a park and that her country "is really, really bad, I believe for young people it's not good to live over there because the situation how it is right now." When asked why petitioner, in particular, might be targeted, she responded: "Because his age, you know. He's young for, you know, gang . . ." Jobnovic has lived in the United States for approximately 26 years.

Following Jobnovic's testimony, the IJ called a five-minute recess so that the parties could review the State Department document. The judge marked the letter as an exhibit in the case, and neither party objected.

After counsel made closing statements, the IJ entered an oral order denying petitioner's application for asylum, withholding of removal, and protection under CAT, but granting petitioner's request for voluntary departure. As to petitioner's request for asylum, the judge concluded that the application was untimely because petitioner had failed to file it within one year of his arrival in the United States. Further, the judge determined that there were no changed or extraordinary circumstances to justify tolling the filing deadline because no evidence suggested that gang violence had changed in El Salvador after petitioner left El Salvador, and petitioner's failure to apply for

asylum because of his pending application for TPS did "not constitute an extraordinary circumstance to prevent his timely filing" of his asylum application.

The IJ concluded that the application should be denied on its merits as well because petitioner had failed to demonstrate either persecution or a well-founded fear of persecution in El Salvador on account of his race, religion, nationality, membership in a particular social group, or political opinion. Although the judge found that petitioner's testimony was "basically credible, [but] vague with respect to the number of time[s] that he was asked to join the gang and threatened for refusal to join the gangs[,]" he concluded that "there is no nexus between the [petitioner's] fear and any of the five [protected] grounds" because "harsh conditions shared by residents of a nation and the harm arising out of civil strife does not alone amount to persecution within the meaning of the law." The judge further explained that, although gangs threatened petitioner in 1998, he did not leave El Salvador until November 2000, and had not experienced any harm during the intervening period. The judge also relied on the State Department report to conclude that "[i]n general, anyone can avoid situation[s] where they would be asked to join a gang and most people are able successfully to avoid joining gangs."

As to petitioner's request for withholding of removal, the IJ found that petitioner had admitted the allegations contained in the Notice to Appear and conceded removability. Based on petitioner's admissions, the judge found that removability had been established by clear and convincing evidence. He then determined that, although there were no jurisdictional time bars to

petitioner's request for withholding of removal, petitioner was not entitled to withholding of removal for the same reasons that his request for asylum lacked merit.

The IJ also denied petitioner's request for protection under CAT, explaining that "based upon the Country Report submitted[, . . .] gang violence is not condoned by the government of El Salvador and . . . there is no evidence that the [petitioner] would be harmed or tortured [at] the instigation or with the acquiesce[nce] of public officials or one acting in that capacity."

On May 18, 2007, the BIA entered a per curiam order affirming the decision of the IJ and dismissing the appeal. Petitioner timely appeals the order of the BIA.

## II.

Petitioner contends that two extraordinary circumstances justified the untimely filing of his asylum application and that, accordingly, the filing deadline should be tolled. First, petitioner asserts that the failure of his attorney to timely file his application for asylum provided him ineffective assistance of counsel. Second, petitioner contends that he mistakenly believed that his application for TPS would be granted, thus obviating the need to seek asylum. Both contentions are without merit.

## A.

Under 8 U.S.C. § 1158(a)(2)(B) and 8 C.F.R. § 1208.4(a)(2)(ii), an alien applying for asylum must demonstrate "by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's [last] arrival in the United States." *See also Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 502 (6th Cir. 2007). An exception to the filing deadline applies "if the alien

demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application . . . ." 8 U.S.C. § 1158(a)(2)(D); *Shkulaku-Purballori*, 514 F.3d at 502.

While ordinarily the timeliness of an alien's asylum application is usually a question of fact not subject to review, *see* 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)" [relating to the one-year filing deadline and its exceptions]) and *Shkulaku-Purballori*, 514 F.3d at 502, we may review asylum applications denied for untimeliness "when the appeal seeks review of constitutional claims . . . ." *Shkulaku-Purballori*, 514 F.3d at 502 (citing *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006)) (internal quotations omitted). Although petitioner correctly notes that a claim for ineffective assistance of counsel is a constitutional claim implicating an alien's due process rights under the Fifth Amendment, *see Hamid v. Ashcroft*, 336 F.3d 465, 468 (6th Cir. 2003), and that ineffective assistance of counsel qualifies as an "extraordinary circumstance" justifying the untimely filing of an application for asylum, *see* 8 C.F.R. § 1208.4(a)(5)(iii), petitioner failed to raise the claim before the IJ or BIA. "A court may review a final order of removal only if – (1) the alien has exhausted all administrative remedies available to the alien as of right . . . ." 8 U.S.C. § 1252(d)(1). We have repeatedly stated that the exhaustion requirement obligates a petitioner to present his claims to the BIA before we may review them. *See, e.g., Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006) ("Only claims properly presented to the BIA and considered on their merits can be reviewed by this

court in an immigration appeal.") (quotations and citations omitted). In *Ramani v. Ashcroft*, 378

F.3d 554 (6th Cir. 2004), we explained that the purpose of Section 1252(d)(1)'s exhaustion

requirement is:

> (1) to ensure that the INS, as the agency responsible for construing and applying the immigration laws and implementing regulations, has had a full opportunity to consider a petitioner's claims; (2) to avoid premature interference with the agency's processes; and (3) to allow the BIA to compile a record which is adequate for judicial review. In this case, these goals would be subverted by considering an issue that was not properly presented to the BIA.
>
> . . .
>
> Unlike many contexts in which exhaustion of administrative remedies is a court-created doctrine, Section 1252(d)(1) provides that federal courts are without jurisdiction to hear an immigration appeal when administrative remedies have not been exhausted . . . . [F]ailure to raise, on . . . an appeal, a particular question concerning the validity of the order constitutes a failure to exhaust administrative remedies with regard to that question, thereby depriving a court of appeals of jurisdiction to consider that question.

*Id*. at 559 (citations and internal quotations omitted). Thus, in *Suassuna v. INS*, 342 F.3d 578, 583

(6th Cir. 2003), we concluded that we lacked jurisdiction to review the petitioner's claim of

ineffective assistance of counsel because the petitioner failed to exhaust his administrative remedies

by raising the claim before the BIA. *See also Sswajje v. Ashcroft*, 350 F.3d 528, 532 (6th Cir. 2003)

(same).

We further note that 8 C.F.R. § 1208.4(a)(5)(iii) establishes a procedural mechanism for

bringing a claim for ineffective assistance of counsel in an asylum and removal proceeding. The

regulation requires that:

(A) The alien file[] an affidavit setting forth in detail the agreement that was entered into with counsel with respect to the actions to be taken and what representations counsel did or did not make to the respondent in this regard;

(B) The counsel whose integrity or competence is being impugned has been informed of the allegations leveled against him or her and given an opportunity to respond; and

(C) The alien indicates whether a complaint has been filed with appropriate disciplinary authorities with respect to any violation of counsel's ethical or legal responsibilities, and if not, why not.

8 C.F.R. § 1208.4(a)(5)(iii).  In *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988), the BIA explained the reason for this procedural requirement:

> The high standard announced here is necessary if we are to have a basis for assessing the substantial number of claims of ineffective assistance of counsel that come before the Board.  Where essential information is lacking, it is impossible to evaluate the substance of such claim.  In the instant case, for example, the respondent has not alleged, let alone established, that former counsel ever agreed to prepare a brief on appeal or was engaged to undertake the task.  Then, too, the potential for abuse is apparent where no mechanism exists for allowing former counsel, whose integrity or competence is being impugned, to present his version of events if he so chooses, thereby discouraging baseless allegations.  The requirement that disciplinary authorities be notified of breaches of professional conduct not only serves to deter meritless claims of ineffective representation but also highlights the standards which should be expected of attorneys who represent persons in immigration proceedings, the outcome of which may, and often does, have enormous significance for the person.

*Id*. at 639-40.  A petitioner's failure to comply with the required procedure for raising an ineffective assistance claim deprives us of jurisdiction to assess the merits of the claim.  *Sswajje*, 350 F.3d at 533.  Petitioner has ignored the procedure set forth in *Lozada* and codified at 8 C.F.R. § 1208.4(a)(5)(iii).

Finally, petitioner has failed to file a motion to reopen proceedings with the BIA based on his claim of ineffective assistance of counsel. *Sswajje*, 350 F.3d at 533 ("The proper avenue for raising ineffective assistance of counsel is by filing a motion to reopen proceedings with the BIA.") (citation omitted). Therefore, because petitioner failed to raise the claim of ineffective assistance of counsel with the IJ or BIA, failed to comply with the procedural requirements for bringing a claim of ineffective assistance of counsel established in *Lozada* and codified at 8 C.F.R. § 1208.4(a)(5)(iii), and failed to file a motion to reopen proceedings with the BIA based on his claim of ineffective assistance of counsel, we lack jurisdiction to consider the merits of the claim.

Even if jurisdiction were proper, petitioner has nevertheless failed to (1) establish ineffective assistance of counsel on its merits and (2) support his contention that the filing deadline, if tolled, should be tolled for *four years*. To establish a claim for ineffective assistance of counsel, petitioner must demonstrate that he was actually prejudiced by his attorney's failure to timely file his application for asylum. *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005). In other words, petitioner must prove that "but for the ineffective assistance of counsel, he would have been entitled to continue residing in the United States." *Sako v. Gonzales*, 434 F.3d 857, 864 (6th Cir. 2006). Petitioner has made no attempt to demonstrate that the timely filing of his asylum application or the filing of a TPS application would have entitled him to continue residing in the United States because petitioner has not proved that those applications would have been *granted*. Indeed, petitioner conceded in his application for asylum that a previous "application [for TPS] was unsuccessful."

- 11 -

As to the application for asylum, the IJ determined, and the BIA affirmed, that the application should be denied on its merits notwithstanding the jurisdictional bar.

We further note that even if petitioner had established that "extraordinary circumstances" on the basis of ineffective assistance of counsel prevented the timely filing of his application for asylum, petitioner has failed to justify tolling the filing deadline for four years. Extraordinary circumstances may only "excuse the failure to file within the 1-year period as long as the alien filed the application within a *reasonable period* given those circumstances." 8 C.F.R. § 1208.4(a)(5) (emphasis added). Petitioner fails to explain why his request to toll the filing deadline for four years is reasonable. Instead, petitioner improperly requests a blanket immunity from the filing deadline.

B.

Petitioner also contends that the filing deadline should have been tolled because he mistakenly believed that his application for TPS would be granted, thus obviating the need to seek asylum.[2] We again lack jurisdiction to consider the merits of the argument because petitioner did not raise the issue on appeal to the BIA. 8 U.S.C. § 1252(d)(1); *Sterkaj*, 439 F.3d at 279.

Even if jurisdiction on this issue were proper, petitioner cites no authority to support his contention that a mistaken belief excuses or tolls the deadline for filing an asylum application and the argument lacks merit. In fact, petitioner unambiguously concedes: "*We agree [with] the*

---

[2]Petitioner contends that he filed an application for TPS but that his "application was unsuccessful." The government, however, asserts that it had no record of an application for TPS filed by petitioner. Whether petitioner filed an application for TPS that was denied or simply failed to file the application does not alter the analysis of petitioner's argument.

*Immigration Judge* that the [petitioner's] application for Temporary Protected Status and the subsequent denial of that application *does not establish extraordinary circumstances* under the regulation at 8 C.F.R. 1208.4(a)(5)(iv)." (Emphasis added.) In the next sentence, petitioner inexplicably retreats from that concession: "The [petitioner] is eligible for an exception to the one-year filing deadline based on extraordinary [] circumstances individualized [sic] analysis of the facts of the particular case."

Petitioner cites no relevant legal authority to support his contention that "the facts of the particular case" qualified as an "extraordinary circumstance" under 8 C.F.R. § 208.4(a)(5). Although petitioner correctly notes that the list of extraordinary circumstances in 8 C.F.R. § 208.4(a)(5) are illustrative, not exhaustive, and that 8 C.F.R. § 208.4(a)(5)(iv) characterizes TPS as an extraordinary circumstance, the section requires that "[t]he applicant *maintain*[] Temporary Protected Status, lawful immigrant or nonimmigrant status, or was given parole, until a reasonable period before the filing of the asylum application." 8 C.F.R. § 208.4(a)(5)(iv) (emphasis added). Here, petitioner did not maintain TPS because he either failed to file his application for TPS or the application was denied, and he had not maintained lawful immigrant or nonimmigrant status, nor had he been given parole, until a reasonable period before the filing of the asylum application. Therefore, petitioner's contention that the deadline for filing his asylum application should be tolled because of his mistaken belief that his application for TPS would be granted and moot the necessity of seeking asylum is without merit.

III.

Petitioner next contends that the IJ should have considered his eligibility for TPS and lawful status under his wife's pending I-130 alien relative petition before denying his application for asylum and ordering his removal. Petitioner requests that we remand the case to permit the agency to consider his eligibility for TPS and lawful status under his wife's pending I-130 alien relative petition.

Again, we lack jurisdiction to grant the relief petitioner requests because petitioner failed to exhaust his administrative remedies. Petitioner did not request that the IJ or the BIA consider his eligibility for TPS and lawful status under his wife's alien relative petition before ruling on his application for asylum and withholding of removal. *Sterkaj*, 439 F.3d at 279. Indeed, petitioner does not assert that the IJ or BIA were even *aware* that an I-130 alien relative petition was pending or that petitioner desired that they consider his eligibility for TPS. Petitioner stated in his application for asylum and for withholding of removal:

> I *had* filed for Temporary Protected Status and was working on this application. However, my application *was unsuccessful*. This attempted filing delayed my attempt to file for asylum. Please accept my I-589 [application for asylum and for withholding of removal.] Thank you.

(Emphasis added.) During the hearing on the application, Attorney Ryser stated:

> [Petitioner] had previously filed for TPS, Your Honor, from El Salvador but he had done so unsuccessfully and basically that's what – he had stalled the filing of the asylum. I guess at the time he did not know that asylum was an option previously.

At no time in the application or at the hearing, nor in the appeal to the BIA, did petitioner or his attorney urge the IJ or the BIA to consider his eligibility for TPS or lawful status under the I-130 petition filed by his wife. 8 U.S.C. § 1254a(b)(5)(B) states:

> The Attorney General shall establish an administrative procedure for the review of the denial of benefits to aliens under this subsection. *Such procedure shall not prevent an alien from asserting protection under this section in removal proceedings* if the alien demonstrates that the alien is a national of a state designated [for TPS].

(Emphasis added.)

In *In re Barrientos*, 24 I. & N. Dec. 100 (BIA 2007), the BIA held that section 1254a(b)(5)(B), by its plain language, permits an alien to assert his right to TPS in a removal proceeding, even if his application has been previously denied. *Id*. at 102. Although *Barrientos* was decided after petitioner's deadline for briefing his appeal to the BIA had expired, the BIA denied petitioner's motion to reopen proceedings under *Barrientos* on December 26, 2007. Petitioner does not now seek review of the BIA's decision denying the motion to reopen, and the issue is therefore waived. *Giesse v. Sec'y of Health and Human Servs.*, 522 F.3d 697, 705 (6th Cir. 2008). Because petitioner failed to exhaust his administrative remedies on his request to remand the case and failed to appeal the BIA's decision denying his motion to reopen, we lack jurisdiction to remand the case.

IV.

Petitioner next contends that he was deprived of due process and materially prejudiced when the IJ relied on a letter from the U.S. Department of State that had not been provided to petitioner prior to the hearing on his application for asylum and withholding of removal. The letter states:

> Dear Immigration Judge:

> We are writing in reply to your office's request for the Department of State's comments on the above applicant's request for asylum, withholding of removal, and relief under the Convention against Torture. These comments should be used in conjunction with the Department's *Country Reports on Human Rights Practices*, which are available online at http://www.state.gov.

The applicant claims that certain gang members threatened to kill him unless he joined their gang and that for this reason he left El Salvador and is seeking asylum. We are not able to verify any information relating specifically to this applicant; nor can we confirm the claim that a gang threatened to kill him unless he joined that gang. We can provide general information on the behavior of gangs in El Salvador.

The U.S. Embassy in El Salvador has reported that while it has many indications that young people who do not want to join a gang may be threatened as a result of their refusal, in general, anyone can avoid situations where they would be asked to join a gang and most people are able successfully to avoid joining gangs.

We hope this information is of use to you. Should you require additional information, please let us know and we will be happy to try to assist you.

The letter was signed by Nadia Tongour, Director of the Office of Country Reports and Asylum

Affairs.

As grounds for petitioner's contention that his due process rights were violated, petitioner

asserts that: (1) the letter was not properly admissible into evidence because it is hearsay, unreliable,

and was not served on him within fourteen days of the hearing; (2) although the Immigration Court

received the letter on June 22, 2005, neither petitioner, nor his attorney, received a copy of the letter

until the hearing on January 17, 2006; (3) the IJ gave petitioner and his attorney a mere five minutes

to examine the letter during the hearing; (4) the IJ "heavily relied" on the letter and "quoted directly"

from it in his decision; (5) petitioner was not afforded a reasonable opportunity to examine the letter,

rebut it, and cross-examine any government witnesses about the letter, in violation of § 240(b)(4)(B)

of the Immigration and Nationality Act;[3] (6) "[e]ven if properly admitted, the immigration judge

_____

[3]Section 240(b)(4)(B) states, in relevant part, that "the alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf,

erred in placing great weight" on the letter because "[t]he Government cannot use the prestige of [the] Department of State letterhead to make its case" and "[t]he immigration court can not blindly rely on the State Department's authority"; and (7) the letter was not properly authenticated. Petitioner further asserts that had he been given the opportunity, he would have rebutted the letter with a manual found at the American Immigration Law Foundation's website.[4]

We again lack jurisdiction to consider petitioner's due process claim because petitioner did not object when the IJ admitted the letter into evidence, nor did he raise the due process claim on appeal to the BIA. In *Ramani*, we addressed a petitioner's contention that the immigration judge "improperly relied on evidence which was not admitted in order to reach his decision and misused the evidence which had been admitted." 378 F.3d at 559. (quotations omitted.) In rejecting this claim as a proper basis for appeal, we stated:

> None of Ramani's arguments concerning the consideration of evidence was properly presented to the BIA. It is proper for an appellate court to consider waived all issues not raised in an appellant's briefs, even if the issue has been raised in the notice of appeal. Neither Ramani's notice of appeal to the BIA, nor his BIA appeal brief, advanced his current argument that the IJ misused certain evidence. While his BIA appeal brief did discuss the use of the *Country Report for Macedonia*, noting that "these reports are infamous for providing an overly rosy picture of most countries," it did not make his current argument that "State Department Opinions are not always reliable," it provided no legal basis for this argument, and it was mentioned only in the context of Ramani's claim that the IJ was biased. By failing to properly present these claims to the BIA, Ramani failed to exhaust his administrative remedies on these issues.

---

and to cross-examine witnesses presented by the Government . . . ."

[4]http://www.ailf.org/lac/GangResourceManual.pdf.

*Id*. at 558-59 (internal citations omitted).

Here, petitioner did not object to the IJ's admission of the State Department letter into evidence, did not request a longer recess to review the document, and did not move to continue the hearing to afford him the opportunity to present rebuttal evidence. In fact, the only communications between Attorney Ryser and the IJ relating to the letter was Attorney Ryser's communication to the IJ that she had not received the letter and her expression of gratitude when the IJ stated that he would fax her a copy of the letter.

In his appeal to the BIA, petitioner did not assert that the IJ erred in admitting the letter into evidence. Accordingly, petitioner deprived the BIA of the opportunity to consider the merits of his argument, and the argument may not now be reviewed by us.[5] *Id*. at 560.

V.

Finally, petitioner challenges the IJ's and BIA's legal conclusion that failure to join a gang does not constitute a statutorily protected ground for withholding of removal.[6] Under 8 U.S.C. §

---

[5]The "manual" that petitioner contends he would have offered to rebut the State Department letter is a resource intended to assist attorneys in advocating gang-based asylum claims. Petitioner fails to articulate how the manual rebuts the State Department letter. Indeed, it was petitioner's burden to demonstrate his entitlement to asylum or withholding of removal. 8 U.S.C. § 1158(b)(1)(B); 8 U.S.C. § 1231(b)(3)(C). If the information contained in the manual supported petitioner's application, he presumably would have sought to admit the evidence, not as rebuttal evidence, but as evidence to support his case-in-chief.

[6]Petitioner raises a cursory challenge to the agency's denial of CAT protection, but his argument on that issue is identical to his claim for withholding of removal. Because CAT protection does not depend on a showing that the feared harm will occur on account of a protected ground, 8 C.F.R. § 1208.18(a)(1), petitioner's arguments are not relevant to CAT protection, and he has waived appeal of the agency's denial of CAT protection. *See Al-Najar v. Mukasey*, 515 F.3d 708, 717 (6th

1231(b)(3)(A), the Attorney General may not remove an alien to a country where his or her "life or freedom would be threatened . . . because of . . . race, religion, nationality, membership in a particular social group, or political opinion." *See also INS v. Cardoza-Fonseca*, 480 U.S. 421, 428-29 (1987). Petitioner contends that the IJ and BIA determined that refusal to join a gang does not qualify as an expression of "political opinion" but failed to consider whether his life or freedom would be threatened in El Salvador because of his "membership in a particular social group," that is, young men who are targeted for conscription into Salvadoran gangs.

We are without jurisdiction to consider the merits of petitioner's argument because petitioner failed to argue on appeal to the BIA that the IJ erred by not considering his "membership in a particular social group." Instead, the sole question petitioner presented on appeal to the BIA was whether the IJ erred in concluding that petitioner did not have a well-founded fear of persecution. Accordingly, the BIA's order affirming the IJ concluded that petitioner's "refusal to join a gang does not constitute an expression of political opinion as contemplated by the Act." The order did not address whether petitioner was entitled to relief based on his "membership in a particular social group." Accordingly, petitioner has failed to exhaust his administrative remedies on this issue. 8 U.S.C. § 1252(d)(1); *Sterkaj,* 439 F.3d at 279.

Even if jurisdiction were proper on this claim, petitioner cites no authority holding that the group of young, Salvadoran males who fear gang recruitment or who choose not to join gangs,

---

Cir. 2008) ("[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (citations omitted).

qualifies as a "particular social group" for purposes of the Act. Relying on decisions from our sister circuits, the BIA recently rejected the precise argument raised by petitioner and held that "the proposed group, which consists of young Salvadorans who have been subject to recruitment efforts by criminal gangs, but who have refused to join for personal, religious, or moral reasons, fails the 'social visibility' test and does not qualify as a particular social group." *Matter of S-E-G*, 24 I. & N. Dec. 579, 588 (BIA 2008).

## VI.

Because petitioner failed to exhaust his administrative remedies on all issues raised in this appeal by not asserting them before the IJ or BIA, we deny the petition for lack of jurisdiction.