RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0063p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JOSE LUIS URBINA-MEJIA,

        *Petitioner-Appellant,*

    *v.*

ERIC H. HOLDER, JR.,

        *Respondent-Appellee.*

No. 09-3567

On Appeal from the United States
Board of Immigration Appeals.
No. A099 762 100.

Submitted: August 24, 2009

Decided and Filed: March 5, 2010

Before: MARTIN, SILER, and MOORE, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:** Jamie B. Naini, THE LAW OFFICES OF JAMIE B. NAINI, Memphis, Tennessee, for Petitioner. John W. Blakeley, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

    MARTIN, J., delivered the opinion of the court, in which MOORE, J., joined. SILER, J. (p. 14), delivered a separate opinion concurring with Parts I., II., and III.C. of the majority and concurring in the judgment.

_____

### OPINION

_____

    BOYCE F. MARTIN, JR., Circuit Judge. Jose Luis Urbina-Mejia seeks review of a Board of Immigration Appeals decision affirming an immigration judge's denial of his applications for withholding of removal under section 241 of the Immigration and Nationality Act, 8 U.S.C. § 1231. The Board of Immigration Appeals erred in finding that Urbina-Mejia was not a member of a particular social group for which he would likely be

subject to persecution should he be returned to Honduras. He was a member of the particular group of former gang members, which is impossible to leave save by rejoining the organization. However, Urbina-Mejia failed to show that evidence compelled a finding that he had sufficiently corroborated his testimony with evidence or that he had not committed serious nonpolitical crimes while a member of the gang before coming to the United States. He was thus statutorily ineligible for withholding of removal. We therefore **DENY** Urbina-Mejia's petition.

## I.

### A.     Factual Background

Urbina-Mejia is a native and citizen of Honduras. He arrived in the United States in April 2002 at the age of seventeen to live with his mother in Memphis, Tennessee, where she has been a legal resident for eleven years. He has no criminal record in the United States, has regularly attended church for the last five years, and had been gainfully employed.

On October 4, 2006, Department of Homeland Security agents filed a Notice to Appear in Immigration Court. The Notice charged Urbina-Mejia with removability for violating section 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA) as an alien who entered the United States without being admitted or paroled. During a master calendar hearing, Urbina-Mejia admitted the factual allegations of having entered the United States without being admitted or paroled and conceded removability as charged. However, at a March 13, 2007 hearing, he filed an application for asylum and withholding of removal under the INA and the Convention Against Torture.

Urbina-Mejia asserts that he left Honduras and entered the United States at that time to escape gang life. Urbina-Mejia joined the 18th Street gang in Honduras in 1998 when he was fourteen years old. He asserts that he was inducted at a school party when members of the gang informed him that he was to join their gang that night and told him to go to the football field where they "persuaded" him to join by continuously beating him for eighteen seconds. Following the beating, he was a member of the gang, and he remained so for three years. He testifies that he does not have gang tattoos because he was in the bottom level of

the gang and only upper level gang members were tattooed with gang symbols. He demonstrated several gang handsigns on the stand.

He asserts that as a gang member he was told that he would be killed if he did not do as he was told. He testified that he was forced to accompany other gang members as they stopped people and demanded their money and valuables, encounters that sometimes ended in Urbina-Mejia and fellow gang members hitting their victims. He testified that he used a baseball bat to intimidate, and sometimes to harm, the victims. He testified that the 18th Street gang leader taught him to use a nine millimeter handgun in case of altercations with a rival gang, the MS-13 gang. While Urbina-Mejia shot the gun into the air to scare members of the MS-13 gang and was once shot in the foot by a member of MS-13, Urbina-Mejia testified that he never seriously injured any rival gang member and that he was otherwise not physically harmed. He testified that he regretted his criminal activities but worried that he would be killed if he did not participate.

Urbina-Mejia also testified that his father has never encountered any difficulty with gangs although he continues to live in the same home and work in the same business. Urbina-Mejia's eight siblings have been robbed by members of the gang, but they have been otherwise unharmed.

### B.    Immigration Judge's Decision

Following a hearing on the merits, the immigration judge issued a decision on September 4, 2007, denying Urbina-Mejia's application for asylum, withholding of removal, and related remedies. The immigration judge determined that Urbina-Mejia was statutorily ineligible for asylum because he failed to file his asylum application within one year of the time he entered the United States, and he otherwise failed to establish extraordinary circumstances or changed country conditions.

As to Urbina-Mejia's claim for withholding of removal, the immigration judge found him credible but denied his claim, finding that he had failed to establish that any mistreatment or fear of mistreatment derived from gang membership or former gang membership was on account of one of the five protected grounds under the INA. Additionally, the immigration judge found that Urbina-Mejia did not sufficiently corroborate

his testimony with additional evidence. The immigration judge specifically noted the lack of correspondence from his father and siblings in Honduras, with whom he is in regular contact, or testimony from his mother, with whom he lives.

The immigration judge found Urbina-Mejia to be statutorily ineligible for withholding of removal under INA § 241(b)(3)(B)(iii) because there were "serious reasons to believe that [he] committed a serious nonpolitical crime" in Honduras, as Urbina-Mejia had testified to committing serious crimes while a member of the 18th Street gang. Although Urbina-Mejia argued that he was coerced into committing these crimes, the immigration judge concluded that he possessed a "fair amount of autonomy" in that he shared in the proceeds of his crimes and carried a firearm.

The immigration judge concluded that Urbina-Mejia failed to establish that he would more likely than not be tortured "because of the acquiescence by the government of Honduras or of public officials showing their 'wilful blindness.'" Thus, the immigration judge denied Urbina-Mejia's claims and ordered him removed to Honduras. Urbina-Mejia timely appealed this decision to the Board on September 21, 2007, arguing that it was an abuse of discretion for the immigration judge not to approve the application for withholding of removal.

### C.      Board of Immigration Appeals Decision

On April 21, 2009, the Board of Immigration Appeals dismissed Urbina-Mejia's appeal, affirming the immigration judge's decision pursuant to 8 C.F.R. § 1003.1(e)(5). The Board went on to agree specifically with the immigration judge that Urbina-Mejia had failed to establish that he would be harmed on account of membership in a particular social group. The Board held that, under *Matter of E-A-G*, 24 I. & N. Dec. 591 (BIA 2007), gang membership is not an immutable characteristic so fundamental to Urbina-Mejia's identity that it would be unconscionable for him to change it. Additionally, the Board held that an expressed opposition to gang activity constituted neither a political opinion nor membership in a particular social group.

The Board also agreed with the immigration judge that Urbina-Mejia's factual admissions provided substantial reason to believe that he had committed serious nonpolitical

crimes, which led the Board to reject Urbina-Mejia's arguments that it should balance the seriousness of his crimes against the degree of persecution he would face. The Board further agreed that Urbina-Mejia failed to establish that gang members had coerced him into committing any of the crimes he admitted.

Urbina-Mejia timely sought review.

**II.**

We generally have jurisdiction to review final orders of removal issued by the Board. *See* 8 U.S.C. § 1252(a). When the Board adopts the immigration judge's reasoning and supplements the immigration judge's opinion, that opinion, as supplemented by the Board, becomes the basis for review. *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009) (citations omitted). Here, as the Board affirmed and supplemented the immigration judge's "well-reasoned decision" (Board Op.), we review the Board's decision as the final agency decision on issues which the Board actually addressed and the immigration judge's decision as final on those issues on which the Board made no findings.

Questions of law are reviewed de novo, but substantial deference is given to the Board's interpretation of the INA and accompanying regulations. *Shaya v. Holder*, 586 F.3d 401, 405 (6th Cir. 2009) (citing *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009)). "The [Board's] interpretation of the statute and regulations will be upheld unless the interpretation is 'arbitrary, capricious, or manifestly contrary to the statute.'" *Id.* (citations omitted).

We review both the immigration judge's and the Board's factual findings under the substantial-evidence standard. *Id.* (citations omitted). We cannot reverse such findings simply because we would have decided them differently. *Id.* (citing *Gishta v. Gonzales*, 404 F.3d 972, 978 (6th Cir. 2005)). "These findings 'are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

**III.**

Urbina-Mejia requests withholding of removal under INA § 241(b)(3).**[1]** Withholding of removal is not discretionary, but rather is mandatory if the alien establishes that his "life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." *Khalili*, 557 F.3d at 435 (citing 8 U.S.C. § 1231(b)(3)(a); *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004)). However, an applicant seeking withholding of removal faces "a more stringent burden than what is required on a claim for asylum," *Liti v. Gonzales*, 411 F.3d 631, 640 (6th Cir. 2005), and the applicant must demonstrate "that there is a clear probability that he will be subject to persecution if forced to return to the country of removal." *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005) (quoting *Pilica*, 388 F.3d at 951). The Board has defined persecution as "the infliction of harm or suffering by the government, or persons the government is unwilling or unable to control, to overcome a characteristic of the victim." *Khalili*, 557 F.3d at 436 (citing *Pilica*, 388 F.3d at 950).

In order to qualify for withholding, Urbina-Mejia must demonstrate that there is a clear probability that he would be subject to persecution if he were to return to Honduras, "because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). To prevail on a petition for withholding of removal under the INA, an alien must show that there is a "clear probability," that is, that "'it is more likely than not,'" that he would be subject to persecution on the basis of one of these five grounds were he removed from this country. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006) (quoting *Liti*, 411 F.3d at 640-41 (quoting 8 C.F.R. § 1208.16(b)(2))). We must determine, therefore, (1) whether Urbina-Mejia is in fact a member of a "particular social group" for purposes of the statute; and (2) whether Urbina-Mejia has presented sufficient evidence to compel a finding that he would, more likely than not, be persecuted on the basis of that

---

**[1]** As Urbina-Mejia did not challenge the immigration judge's determination that he had failed to establish eligibility for withholding of removal under the Convention Against Torture, the Board did not address this issue.

membership.  *Castellano-Chacon v. I.N.S.*, 341 F.3d 533, 545 (6th Cir. 2003) (citation omitted).

### A.     Is Urbina-Mejia a member of a particular social group?

In *Castellano-Chacon*, we defined a "'particular social group' as composed of individuals who share a 'common, immutable characteristic.'"  341 F.3d at 546.  We noted that this was consistent with the Board's holding that "refuge is restricted to individuals who are either unable by their own actions, or as a matter of conscience should not be required, to avoid persecution."  *Id.* at 547 (quoting *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985)).  In that case, we noted that it was "possible to conceive of the members of MS-13 as a particular social group under the INA, sharing for example the common immutable characteristic of their past experiences together, their initiation rites, and their status as Spanish-speaking immigrants in the United States."  *Id.* at 549.  We held that, while this might have been a conceivable argument, the petitioner had not made it and so we could not consider it.

Both the immigration judge and the Board misunderstood and misapplied our holding in *Castellano-Chacon*.  The immigration judge reasoned that, because Urbina-Mejia was not tattooed, he had "failed to show that the characteristic which he possesses is so fundamental to his identity that it would be unconscionable for him to change it. . . . It is not unconscionable to ask a former gang member to give up his membership in a gang considering the social harm that the gangs have wrought in Honduras and the potential for injury to innocent members of the public in that country."  The Board agreed that Urbina-Mejia had not established that he would be harmed on account of his membership in a particular social group because "gang membership is not an immutable characteristic so fundamental to his identity that it would be unconscionable for him to change it" and "his presently expressed opposition to gang activity does not constitute membership in a particular social group or political opinion."

The immigration judge and the Board are correct that "'[b]eing a member of a gang is not a characteristic that a person cannot change or should not be required to change' provided that he can resign without facing persecution for doing so."  *Ramos*

*v. Holder*, 589 F.3d 426, 429 (7th Cir. 2009) (citation omitted) (finding that a former gang member was eligible for withholding of removal should he be found not to have committed a serious nonpolitical crime). However, "being a former member of a group is a characteristic impossible to change, except perhaps by rejoining the group." *Id.* (citing *Gatimi v. Holder*, 578 F.3d 611, 614 (7th Cir. 2009) (holding that a former member of a violent criminal Kenyan faction called the Mungiki was a member of a particular social group, namely former members of Mungiki); *Sepulveda v. Gonzales*, 464 F.3d 770, 771-72 (7th Cir. 2006) (holding that former subordinates of the attorney general of Colombia who had information about the insurgents plaguing that nation constituted a particular social group); *Koudriachova v. Gonzales*, 490 F.3d 255, 262-63 (2d Cir. 2007) (former KGB agents); *Cruz-Navarro v. INS*, 232 F.3d 1024, 1028-29 (9th Cir. 2000) (former members of the police or military); *Velarde v. INS*, 140 F.3d 1305, 1311-13 (9th Cir. 1998) (former bodyguards of the daughters of the president); *Chanco v. INS*, 82 F.3d 298, 302-03 (9th Cir. 1996) (former military officers); and *In re Fuentes*, 19 I. & N. Dec. 658, 662 (BIA 1988) (former members of the national police)). We have likewise affirmed a Board finding that being a former member of a group "is an immutable characteristic and that mistreatment because of such status could be found to be persecution on account of . . . membership in a particular social group." *Velasquez-Velasquez v. INS*, 53 F. App'x 359, 364 (6th Cir. 2002) (holding that being a former soldier constituted an immutable characteristic).

As in *Ramos* and *Velasquez*, it is impossible for Urbina-Mejia to change his membership in the group of former 18th Street gang members. It is not that he is unwilling to cast off gang membership; indeed, he came to the United States in order to escape the gang. However, once one has left the gang, one is forever a former member of that gang. Additionally, Dr. Valdez, an expert in gang activities, corroborated Urbina-Mejia's testimony[2] that Urbina-Mejia would be recognized by the 18th Street gang and

---

[2]Both Urbina-Mejia and Dr. Valdez testified that Urbina-Mejia would be subject to future persecution from the 18th Street gang, which he attempted to quit when he left Honduras, and the MS-13 gang, the rival gang with which he had several interactions, should he be returned to Honduras. As the immigration judge noted, "Dr. Valdez testified that either MS-13 or 18 would be able to wreak vengeance on [Urbina-Mejia] in the United States if they believe that he was a big enough fish that he needed to be caught. [He] described the gangs as opportunistic and if the opportunity presented it self [sic] to retaliate

the MS-13 gang as an ex-gang member if he returned to Honduras. He further opined that, based upon his membership in the 18th Street gang, Urbina-Mejia's life would be in danger if he were to return to Honduras.[3]

Thus, the immigration judge and the Board erred as a matter of law in finding that Urbina-Mejia was not a part of a particular social group for the purposes of withholding of removal.

**B.     Is there sufficient evidence to compel a finding that Urbina-Mejia would, more likely than not, be persecuted as a result of his membership in a particular social group?**

We next consider whether the Board erred in affirming the immigration judge's finding that Urbina-Mejia had not presented sufficient corroborating evidence that he would be subject to persecution in Honduras because of his membership in a particular social group, thus entitling him to the withholding of removal. "This court is bound by the REAL ID Act of 2005 and may not reverse an agency finding as to the availability of corroborating evidence 'unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable.'" *Fisenko v. Holder*, 336 F. App'x 504, 513 (6th Cir. 2009) (quoting 8 U.S.C. § 1252(b)(4) (as amended by The REAL ID Act of 2005)). Section 1229a(c)(4)(B) provides:

> Where the immigration judge [in removal proceedings] determines that the applicant should provide evidence [that] corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence.

against [Urbina-Mejia], that opportunity would be capitalized upon by the gangs when [he] returned to Honduras." (IJ Decision at 3).

[3]We have previously noted that the Board recently held that "'the proposed group . . . of young Salvadorans who have been subject to recruitment efforts by criminal gangs, but who have refused to join for personal, religious, or moral reasons, fails the 'social visibility' test and does not qualify as a particular social group.'" *Flores v. Mukasey*, 297 F. App'x 389, 400 (6th Cir. 2008) (unpublished) (quoting *Matter of S-E-G*, 24 I. & N. Dec. 579, 588 (BIA 2008)). However, *Flores* is unpublished and therefore non-precedential. Additionally, as the *Flores* Court dismissed each of the claims on jurisdictional grounds, *see id.* at 366-400, the substance of the opinion is dicta.

Moreover, even if this case were precedential, it is easily distinguishable. Urbina-Mejia instantly would be visibly identifiable to both the 18th Street gang that he had left and likely to the rival MS-13 gang. However, as neither the immigration judge nor the Board applied the social visibility test, the government concedes that this issue is not before us.

8 U.S.C. § 1229a(c)(4)(B).  Thus, under the REAL ID Act, if the agency determines that an applicant should provide corroborating evidence, even if the applicant is found credible, corroborating evidence is required unless the applicant cannot reasonably obtain that evidence, and we are bound to uphold a finding that corroborative evidence is available unless compelled otherwise.  In short, under the REAL ID Act, we must determine (1) whether the request for corroboration was proper and (2) whether Urbina-Meija met his burden to show that he could not reasonably obtain the properly requested evidence prior to addressing (3) whether the remaining evidence is sufficient to compel a finding that he will more likely than not suffer persecution upon removal.

Urbina-Mejia argues that the immigration judge erred in finding that he did not adequately corroborate his testimony.  He submits that, as (1) the immigration judge found him to be credible, (2) Dr. Valdez had testified that he found Urbina-Mejia to be credible and found no gaps in his testimony, and (3) he himself believed that Urbina Mejia would be in danger were he returned to Honduras, the immigration judge required an unreasonable amount of corroborating evidence.

In this case, the immigration judge ultimately found Urbina-Mejia to be a credible witness under the REAL ID Act.  He additionally found Dr. Valdez, who sought to corroborate Urbina-Mejia's testimony, to be "an expert in gang psychology, more specifically sociology of gangs, noting his training, noting his experience, but also noting his relative lack of experience in Central America."  (App'x at 36).  The immigration judge, however, found that Urbina-Mejia had failed to provide available corroborating evidence in that he had failed to provide testimony or letters from his mother, who lives in the United States; from his father or siblings, who live in Honduras and with whom he is in regular contact; or from his pastor.  The immigration judge found that corroboration was especially important in this case because it is to corroborate not only Urbina-Mejia's fear but also whether it is more likely than not that respondent would be subject to persecution were he to return to Honduras.  Additionally, the immigration judge found that Dr. Valdez's testimony "was not corroboration but merely opinion about what might happen" as there were a few inconsistencies between Urbina-

Mejia's statement to Dr. Valdez and his testimony before the immigration judge at the hearing. (App'x at 18-19).

We agree with Urbina-Mejia that some of the requested corroboration, specifically letters from his siblings who were likely too young to understand any threats to their much older brother, and testimony from his mother and a letter from his pastor, who were not in Honduras during the relevant time period, are unlikely to be probative with respect to the likelihood of persecution in Honduras. However, a letter from his father would have helped corroborate Urbina-Mejia's claims and such a request was appropriate by the immigration judge, but Urbina-Mejia failed to provide them. As previously noted, section 1252(b)(4) instructs that we are prohibited from reversing the agency's finding "with respect to the availability of corroborating evidence . . . unless [we] find[] . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." Urbina-Mejia was in frequent contact with his father and provided no evidence that such evidence was unavailable or even that he had requested it. Urbina-Mejia simply explained that he had not presented such evidence because no one asked him for it. (App'x at 76, 84). As such, Urbina-Mejia has failed to compel a conclusion that such corroborating evidence is unavailable.

We do not agree that Dr. Valdez's testimony qualifies as a mere opinion, rather than as corroborative evidence. However, even considering Dr. Valdez's testimony in addition to that of Urbina-Mejia, the immigration judge's conclusion that the available evidence was insufficient to compel a finding that Urbina-Mejia would more likely than not suffer persecution upon removal was reasonably based on substantial evidence.[4] Thus, the Board and the immigration judge did not err in finding that Urbina-Mejia had failed to corroborate his credible testimony with available evidence.

---

[4]While the immigration judge found Urbina-Mejia's testimony to be credible, Urbina-Mejia has failed to show that his testimony must be found sufficient to sustain his burden of proof without corroboration merely because it may do so when no corroborating evidence is available. Thus, he has failed to show that the immigration judge's contrary conclusion must be reversed as this is not a case where the applicant's testimony is the only evidence available.

**C.     Did Urbina-Mejia commit serious nonpolitical crimes outside the United States before arriving here rendering him statutorily ineligible for withholding of removal?**

The Board rejected Urbina-Mejia's argument that the relatively minor nature of his crimes in Honduras should be balanced against the degree of persecution and affirmed the immigration judge's finding that Urbina-Mejia "failed to establish that he was coerced into committing serious crimes."

As previously noted, withholding of removal is mandatory if an alien establishes that he is more likely than not to "be subject to persecution on [that ground]." *INS v. Stevic*, 467 U.S. 407, 429-30 (1984). However, withholding of removal is not available if the Attorney General finds that the alien committed a "serious nonpolitical crime" before arriving in the United States. 8 U.S.C. § 1231(b)(3)(B)(iii). However, the Supreme Court noted that "what constitutes a 'serious nonpolitical crime' is not susceptible of rigid definition." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 429 (1999) (quoting Deportation Proceedings for Doherty, 13 Op. Off. Legal Counsel 1, 23 (1989)). In *INS v. Aguirre-Aguirre*, the Supreme Court held that the phrase "serious nonpolitical crime" should be applied by weighing the political nature of the act against the criminal or common law nature of the act. *Aguirre*, 526 U.S. at 423. Additionally, the Board may supplement this standard with two specific inquiries to simplify analysis, "whether there is a gross disproportion between means and ends, and whether atrocious acts are involved." *Id.* at 429-30.

The Board agreed with the immigration judge that Urbina-Mejia's admissions provide substantial reasons for believing that he had committed serious nonpolitical crimes outside the United States. The Board further rejected Urbina-Mejia's contention that the seriousness of his crimes should be balanced against the degree of persecution that he will face if returned to Honduras as it agreed with the immigration judge that there was no political element to the crimes. The Board also affirmed the immigration judge's factual determination that Urbina-Mejia had failed to establish that he was coerced into committing serious crimes.

Urbina-Mejia argues that the Board and the immigration judge abused their discretion in not considering Urbina-Mejia's juvenile status and the fact that he was coerced into committing all crimes to which he had testified. He further asserts that, had the immigration judge applied the optional supplemental specific inquiries that the Supreme Court described in *Aguirre*, both his age and the conditions under which he joined and remained in the 18th Street gang would have compelled a finding that he was not statutorily ineligible for withholding of removal.

Urbina-Mejia does not dispute that his crimes had no political connotations or that the immigration judge was not compelled to apply the additional analysis by Supreme Court precedent. Additionally, as he makes no substantial arguments on this issue, Urbina-Mejia fails to compel reversal of the immigration judge's and the Board's conclusion that his criminal activity was not coerced. Thus, Urbina-Mejia's own testimony about his actions while a member of the gang, including hitting a man in the back with a baseball bat and extorting people for money on the street, supports the Board's conclusion that there is reason to believe that he engaged in serious nonpolitical crimes. Therefore, there is substantial evidence to conclude that he is statutorily ineligible for withholding of removal under 8 U.S.C. § 1231(b)(3)(B)(iii).

## IV.

For all of the reasons set forth above, we **DENY** Urbina-Mejia's petition.

---------------------

**CONCURRENCE**

---------------------

SILER, Circuit Judge, concurring.  I concur in the judgment of the majority opinion, but I write separately, because I do not feel that we need to discuss certain aspects of the case.  In particular, I concur with Parts I., II., and III.C.  Under III.C., the majority opinion agrees with the BIA that the IJ correctly found that Urbina-Mejia was statutorily ineligible for withholding of removal because he admitted that he committed serious nonpolitical crimes over a period of three years.  As the majority holds, withholding of removal is not available if the Attorney General finds that the alien committed a "serious nonpolitical crime" before arriving in the United States.  8 U.S.C. § 1231(b)(3)(B)(iii).  Thus, if we affirm on that issue, it does not matter if the alien was a member of a particular social group and had been subject to persecution on that ground.  Therefore, I do not adopt the majority's conclusions in Part III.A., because it is not necessary in this case.  I would leave to another day the question of whether a similar person belonged in this particular social group.

Similarly, I do not adopt Part III.B., concerning whether there was sufficient corroborating evidence to the testimony of Urbina-Mejia before the IJ.  The BIA did not adopt or reach the IJ's determination that Mejia failed to corroborate his testimony.  Although this issue of insufficient corroboration was raised by Urbina-Mejia in his brief, when the BIA reviews the IJ's decision and issues its own separate opinion, as found here, we review the BIA opinion as the final agency determination.  *See Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007).  Because the BIA did not discuss the lack of corroboration, I do not feel that the issue is before us.