**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0593n.06

**No. 14-4137**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| STEFAN DRAGNEA, | ) | |
| | ) | **FILED** |
| Petitioner, | ) | Aug 19, 2015 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE BOARD OF |
| LORETTA E. LYNCH, Attorney General, | ) | IMMIGRATION APPEALS |
| | ) | |
| Respondent. | ) | |

Before: BOGGS and DONALD, Circuit Judges; and QUIST, District Judge.[*]

BOGGS, Circuit Judge. An immigration judge (IJ) denied Stefan Dragnea's request for withholding of removal on the grounds that Dragnea's testimony was not credible and that he failed to produce corroborating evidence. The IJ also denied, as a matter of discretion, Dragnea's request for voluntary departure. The Board of Immigration Appeals (BIA) affirmed, and Dragnea petitions for review. Dragnea's petition lacks merit because: (1) he does not show that every reasonable fact finder would be compelled to find his testimony credible; (2) he failed to present corroborating evidence that was readily available; and (3) we lack jurisdiction to review the discretionary denial of his voluntary-departure request. Accordingly, we dismiss the petition in part and deny it in part.

---

[*] The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

## I.    BACKGROUND

Dragnea, a native and citizen of Romania, entered the United States via New York City in 1999 as a crewman in transit. He overstayed his transit visa and moved to Detroit. According to Dragnea, he told his then-wife, whom he had married in 1986, that he was not returning to Romania, and the two divorced. Dragnea's ex-wife and son later migrated to the United States, and the ex-wife married an unidentified person, whom she later divorced.[1] Dragnea claimed to have been unaware that his wife was in the United States until 2001 or 2002, when he met her by coincidence at church. Dragnea and his wife reconciled and the two have lived together since at least June 2005.

On June 13, 2011, a police officer stopped Dragnea for a cracked windshield. The officer discovered his illegal-immigrant status and turned Dragnea over to Immigration and Customs Enforcement (ICE). ICE served Dragnea with a Notice to Appear on June 13, 2011, alleging that he was removable from the United States. Conceding removability, Dragnea applied for withholding of removal based on his claim that Romania's government would persecute him on the basis of his Roma ethnicity. To support this claim, Dragnea alleged that, while he lived in Romania in the 1980s and 90s, he suffered anti-Roma discrimination and persecution. In the alternative, Dragnea sought voluntary departure.

The IJ denied Dragnea's request for withholding of removal because he concluded that Dragnea "ha[d] absolutely no credibility" due to numerous inconsistencies and gaps in Dragnea's account of his life in Romania and in the United States. These inconsistencies and gaps included testimony relating to: (1) Dragnea's relationship with his ex-wife and her second husband; (2) his

---

[1] Dragnea identified the ex-husband as "Nicolisat" but claimed that he did not recall the man's first name.

membership in a Roma organization; (3) his employment history in Romania; and (4) his experience of anti-Roma persecution.

One particularly salient inconsistency involved Dragnea's account of being attacked in 1996 by a knife-wielding anti-Roma assailant. Dragnea had previously claimed that, after 1985, he could not obtain formal employment in Romania due to pervasive anti-Roma discrimination. But medical documentation that Dragnea produced to corroborate the 1996 attack states that his injuries excused him from duties at his place of employment, a company called Navrom. Dragnea's friend, while testifying to corroborate the attack, confirmed that Dragnea was working for a shipping company called Navrom in 1996. Dragnea denied that Navrom was a shipping company and claimed that it was the name of his high school. Dragnea provided no explanation as to why he needed to be excused from high school when he was in his mid-thirties.

The IJ also concluded that Dragnea's documentary evidence was not credible. His evidence included a 1990 document from a city prosecutor's office and the above-mentioned 1996 medical report. Dragnea alleged that he was arrested and abused by Tulcea city police in March 1990, when he was 29 years old, because he was Roma. He produced a document, dated March 3, 1990, from the Tulcea Prosecutor's Office "certifying" that Dragnea had been detained and interrogated for "opposing the Communist regime" and that he "remain[s] under close monitoring from authorities, being subject to random check-ins and persecutions after 1990." The IJ was suspicious of the document's authenticity because it made "little sense" for a prosecutor to admit to persecuting Dragnea "after 1990," when the document was dated March 3, 1990. Dragnea testified that he obtained this document from his "current daughter-in-law." But he did not identify the daughter-in-law and indicated on his withholding-of-removal application that his only son, a naturalized U.S. citizen, was unmarried. Dragnea also testified that his son

3

obtained the 1996 medical report that corroborates his account of being the victim of a knife attack. But the IJ noted that, despite being nearly 20 years old, the report was in "mint condition" and appeared to have been stamped with a certifying seal *before* being filled out by medical staff. Based on these apparent inconsistencies, the IJ made an adverse-credibility determination.

The IJ additionally found that, even if Dragnea were credible, he would not be entitled to withholding of removal because he failed to provide readily available corroborating evidence. Even though Dragnea's U.S. citizen son was in the courthouse and allegedly was responsible for obtaining the 1996 medical report that the IJ found unreliable, the son did not testify as to the authenticity of that report. Nor did Dragnea's unidentified daughter-in-law testify as to the origins of the 1990 documentation of Dragnea's alleged persecution by police, even though she supposedly lived with Dragnea. Finally, Dragnea's ex-wife and current cohabitant, to whom he was married from 1986 to 1999, did not testify as to Dragnea's persecution and denial of employment opportunities on the basis of his ethnicity during that period.

The IJ also concluded that Dragnea was not entitled to voluntary departure as a matter of discretion because of his dishonest conduct at the hearing. Dragnea appealed, and the BIA affirmed.[2] Dragnea now petitions for review of the BIA's affirmance.

## II.    DISCUSSION

### A

A removable applicant may qualify for withholding of removal if he establishes that "it is more likely than not" that removal would lead to persecution on account of his "race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R.

---

[2] The BIA noted that "[t]o the extent the Immigration Judge made a finding that the medical document submitted was fraudulent, we do not affirm such finding where it was made without review by the Forensic Document Lab or similar expert."

§ 1208.16(b)(2). The REAL ID Act of 2005, Pub. L. No. 109–13, 119 Stat. 302, governs "applications for asylum, withholding of removal, or other relief from removal filed on or after May 11, 2005." *El–Moussa v. Holder,* 569 F.3d 250, 256 (6th Cir. 2009). Before determining whether an applicant meets the criteria for withholding of removal, an adjudicator must make a threshold determination as to the applicant's credibility. *Slyusar v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014) ("An adverse credibility determination is fatal to claims for asylum and relief from removal, preventing such claims from being considered on their merits."). In making a credibility determination, the Real ID Act authorizes the IJ to consider "*any* inaccuracies or falsehoods in [an applicant's] statements, *without regard* to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii) (emphases added). As a separate matter, the IJ may also require corroborating evidence unless the applicant cannot reasonably obtain such evidence. *Id.* § 1158(b)(1)(B)(ii); *Urbina-Mejia v. Holder*, 597 F.3d 360, 367 (6th Cir. 2010).

While we review the BIA's conclusions of law de novo, *Urbina-Mejia*, 597 F.3d at 364, administrative factual findings—including findings as to credibility and the availability of corroborating evidence—are reviewed for substantial evidence and "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Karimijanaki v. Holder,* 579 F.3d 710, 714 (6th Cir. 2009) (quoting 8 U.S.C. § 1252(b)(4)(B)). "When the BIA adopts the IJ's reasoning and supplements the IJ's opinion, that opinion, as supplemented by the BIA, becomes the basis for review." *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009).

5

**B**

We first consider Dragnea's argument that the BIA and the IJ erred in concluding that he lacked credibility. An IJ's adverse-credibility determination is conclusive unless any reasonable adjudicator would be compelled to make a contrary conclusion. *Karimijanaki*, 579 F.3d at 714.

The IJ relied upon numerous indicia of unreliability, including inconsistencies and gaps in Dragnea's testimony and documentary evidence, to make an adverse-credibility determination. Dragnea does not dispute the existence of inconsistencies, and instead argues that the IJ improperly relied on inconsistencies that did not directly relate to the heart of his claim. Appellant's Br. 18–19, 30. But the REAL ID Act expressly permits the IJ to consider inconsistencies that do not directly relate to the heart of an applicant's claim. 8 U.S.C. § 1158(b)(1)(B)(iii). Moreover, the IJ identified indicia of unreliability that related directly to Dragnea's account of his past persecution. These included documentary and testimonial evidence that Dragnea was employed during a period in which he claimed that anti-Roma discrimination prevented him from obtaining a job and an alleged 1990 document from the Tulcea Prosecutor's Office that bizarrely admitted to Dragnea's *future* persecution.

Dragea also alleges that translation error may have caused the IJ to erroneously conclude that he was not credible, and urges us to remand for a new hearing. Appellant's Br. 20–21, 30. While Dragnea points out several occasions at which the translator had trouble keeping up with the pace of the conversation and requested a pause, he fails to identify any translation errors. Further, Dragnea does not challenge the translation of the relevant medical documents.[3] These documents alone cast doubt on Dragnea's credibility and so prevent any reasonable adjudicator

---

[3] The IJ afforded Dragnea a continuance to re-translate some of these documents so as to minimize the risk of translation error.

from being compelled to find him credible.  Accordingly, the BIA did not err in affirming the IJ's adverse-credibility determination.

C

We next consider whether the BIA erred in affirming the IJ's finding that Dragnea failed to present sufficient corroborating evidence that he would be subject to persecution upon returning to Romania.

> [W]e must determine (1) whether the request for corroboration was proper and (2) whether [petitioner] met his burden to show that he could not reasonably obtain the properly requested evidence prior to addressing (3) whether the remaining evidence is sufficient to compel a finding that he will more likely than not suffer persecution upon removal.

*Urbina-Mejia*, 597 F.3d at 367.  We "may not reverse an agency finding as to the availability of corroborating evidence 'unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable.'"  *Ibid.* (quoting 8 U.S.C. § 1252(b)(4) as amended by the Real ID Act of 2005).

The IJ found that Dragnea failed to call three witnesses who could have corroborated his account of past persecution.  First, Dragnea's ex-wife and current cohabitant did not testify as to his past persecution even though she was married to him during the period in which such persecution allegedly occurred.  Second, Dragnea claimed that his "current daughter-in-law" obtained the 1990 document from the Tulcea Prosecutor's Office but did not identify her by name.  The IJ reasonably inquired of Dragnea as to how she acquired the document, but the daughter-in-law did not testify even though she supposedly lived with Dragnea.  Finally, Dragnea claims that his son obtained the 1996 medical report that bore indicia of fraud.  The IJ reasonably inquired as to how Dragnea's son obtained this report, but Dragnea was unresponsive, and the son did not testify despite being in the courthouse at the time.

Testimony from Dragnea's ex-wife, daughter-in-law, and son would have been probative as to whether Dragnea suffered persecution on the basis of his ethnicity. It was therefore proper for the IJ to request corroborating testimony from his family members. Dragnea gives no reason for their unavailability. He therefore fails to compel a conclusion that corroborating evidence was unavailable. Accordingly, the BIA did not err in affirming the IJ's conclusion that Dragnea failed to corroborate his account with available evidence.

**D**

The Attorney General has discretion to permit an alien who is subject to removal to depart the country voluntarily if the alien meets certain criteria. *See* 8 U.S.C. § 1229c. We generally lack subject-matter jurisdiction over appeals from the discretionary denial of a request for voluntary departure, *id.* § 1229c(f), but an exception exists for "constitutional claims or questions of law," *id.* § 1252(a)(2)(D). Dragnea does not raise any constitutional claims or questions of law and argues only that he fulfills the statutory criteria that make him eligible for discretionary relief. Appellant's Br. at 38–39. The IJ denied Dragnea relief as a matter of discretion, and the BIA affirmed. This denial is beyond our jurisdiction.

**III.    CONCLUSION**

The IJ's denial of withholding of removal was supported by substantial evidence, and nothing in the record compels a contrary conclusion. We therefore DENY Dragnea's withholding-of-removal petition. We also DISMISS Dragnea's request for voluntary departure for lack of jurisdiction.