NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0165n.06

No. 24-3610

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| DEYSI DE JESUS AVILES-SOLANO; JIMMY ADONAY MERINO-AVILES; CARLOS ERNESTO MERINO-AVILES, | ) ) ) ) | **FILED** Mar 26, 2025 KELLY L. STEPHENS, Clerk |
| Petitioners, | ) ) | ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF |
| v. | ) ) | IMMIGRATION APPEALS |
| PAMELA BONDI, Attorney General, | ) ) | OPINION |
| Respondent. | ) ) | |

Before:  STRANCH, THAPAR, and DAVIS, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.**  Deysi De Jesus Aviles-Solano, a citizen of El Salvador, was threatened by the Barrio 18 gang and fled to the United States.  She, along with two of her children as derivative riders, sought asylum based on her membership in a particular social group (PSG).  She also applied for withholding of removal and protection under the Convention Against Torture (CAT).  An immigration judge (IJ) denied her application, and the Board of Immigration Appeals (BIA) affirmed that ruling.  Based on the record in this case, we **DENY** Aviles-Solano's petition for review.

## I.  BACKGROUND

This case arises from an application for asylum and withholding of removal under the Immigration and Nationality Act (INA) and CAT protection that was heard and decided by an IJ. The BIA, on appeal, adopted and affirmed the IJ's factual findings and legal conclusions.  The case

comes to this court on direct appeal of the BIA's decision. We relay the facts found by the IJ and adopted and affirmed by the BIA.

### A.  Factual Background

Aviles-Solano is a native and citizen of El Salvador who left her country to enter the United States in June 2014. Aviles-Solano has three children, all of whom attended school in El Salvador prior to their departure in 2014. Aviles-Solano lived in a neighborhood claimed as territory by the Barrio 18 gang,[1] and her son Carlos attended school in a neighborhood claimed by the rival MS-13 gang. The Barrio 18 gang believed that Carlos was a member of the MS-13 gang, and its members bullied him. In February 2014, when Carlos was in eighth grade, some of Carlos's friends asked him to join the Barrio 18 gang, but he declined saying he was busy with school. The same month that Carlos refused to join the Barrio 18 gang, its members threatened him and his entire family. The gang extorted Aviles-Solano by demanding $7,000. Aviles-Solano testified that the gang members knew that her children's father lived in the United States, creating an impression of family wealth. Aviles-Solano did not have and could not pay the extortion amount. A few months later, in May 2014, Barrio 18 threatened to kill Carlos if he did not join the gang. He again refused. The gang reiterated its demand that Aviles-Solano and the entire family pay its extortion fee.

Aviles-Solano testified that she feared she and her children would be killed if they remained in El Salvador because she did not pay the extortion fee. Aviles-Solano also feared Carlos would be killed for his refusal to join the Barrio 18 gang. She knew that others who refused to pay extortion fees or join the Barrio 18 gang were killed by the gang. Aviles-Solano testified that she did not report the extortion demands to the police because the police worked closely with

---

[1] In the record, the Barrio 18 gang is referred to interchangeably as the Mara 18 gang.

the Barrio 18 gang, and some neighboring families were killed for going to the police and reporting extortion demands. Aviles-Solano also testified that her cousin, a university student, was killed in 2008 by the MS-13 gang because its members thought he was a Barrio 18 member, and the police did nothing about his murder. Due to her fears, in June 2014, Aviles-Solano fled to the United States with her three children. Aviles-Solano did not attempt to relocate in El Salvador, explaining that gangs are present throughout the country. Aviles-Solano and her children were never injured by the gangs.

Aviles-Solano's mother and brother still live in El Salvador and have not had any issues with gangs. Carlos testified that his family members remaining in El Salvador fear leaving the house.

### B.    Procedural Background

The Government initiated removal of Aviles-Solano and her children in a Notice to Appear dated June 27, 2014. As relief from removal, Aviles-Solano sought asylum and withholding of removal under 8 U.S.C. § 1158(a)-(b) and § 1231(b)(3) and CAT protection under 8 C.F.R. § 1208.16. Pursuant to INA § 208(b)(3)(A), two of Aviles-Solano's children, James and Carlos, are derivative beneficiaries of her asylum application and are therefore eligible for asylum if Aviles-Solano is granted asylum.[2] An individual hearing was held on February 10, 2020 before the IJ. At the hearing, Aviles-Solano's credibility was not at issue, because the Government agreed that she was credible. Aviles-Solano asserted membership in three PSGs: El Salvadoran citizens who refuse to pay the Barrio 18 gang's extortion demand; El Salvadoran citizens who are the

---

[2] Aviles-Solano's third child, Karen, was originally a derivative beneficiary of Aviles-Solano's asylum application, but upon Karen's motion, the BIA severed her case. Karen is not a party to this appeal.

mothers of children who refuse to join the Barrio 18 gang; and El Salvadoran citizens who live in Barrio 18 gang territory and have children that attend school in the MS-13 gang territory.

The IJ held in an oral ruling that Aviles-Solano was not eligible for asylum or withholding of removal. The IJ first concluded that there was no nexus between the proposed PSGs and Aviles-Solano's alleged persecution because Aviles-Solano was not targeted as a member of any of her asserted groups. Instead, she was "merely targeted by the gangs for the specific reason of extorting money from [her]." The IJ then explained that Aviles-Solano had not demonstrated past persecution because she had never been harmed by the gang. The IJ also found that the proposed groups were each "not socially distinct" and "too diffuse" to qualify as PSGs. On these grounds, the IJ denied the application for asylum and withholding of removal.

The IJ also concluded that Aviles-Solano was not eligible for CAT protection because she did not make the necessary showing that she would more likely than not be tortured at the hands of or with the acquiescence of El Salvador's government. The IJ found that Aviles-Solano offered little or no evidence supporting that claim. The IJ dismissed the application and ordered Aviles-Solano and her children removed.

On March 5, 2020, Aviles-Solano appealed the IJ's decision to the BIA. The BIA adopted the IJ's reasoning as follows. It agreed with the IJ's conclusion that Aviles-Solano's proposed PSGs were not cognizable because "the groups are not socially distinct." The BIA also adopted the IJ's conclusion that Aviles-Solano had not established the nexus requirement between her asserted past or well-founded fear of persecution and her defined PSGs. The BIA found that Aviles-Solano did not "meaningfully challenge the denial of" her application for CAT protection. The BIA found any challenges to the IJ's denial of CAT protection waived. The BIA thus affirmed the IJ's denial of Aviles-Solano's petitions for asylum, withholding of removal, and CAT

protection. Aviles-Solano appeals the BIA's conclusion that she was not eligible for asylum and withholding of removal.[3]

## II. DISCUSSION

### A. General Principles of Asylum and Withholding of Removal

Under the INA, the Attorney General can grant asylum to applicants who meet the definition of "refugee." 8 U.S.C. § 1158(b). The INA defines "refugee," in relevant part, as someone who is "unable or unwilling" to return to her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" 8 U.S.C. §§ 1101(a)(42)(A); 1158(b)(1)(B)(i). To make a successful asylum claim under the INA, Aviles-Solano bears the burden of showing that:

> (1) her treatment in El Salvador constitutes past persecution or that she has a well-founded fear of future persecution; (2) there was a connection between her persecution and her membership in a particular social group (the "nexus" requirement); and (3) the persecution was committed by the government, or by non-government actors whom the government was unable or unwilling to control.

*Vasquez-Rivera v. Garland*, 96 F.4th 903, 907 (6th Cir. 2024).

To qualify for withholding of removal, the INA requires a petitioner to establish that if removed to her country of origin, her "life or freedom would be threatened" based on her "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). "[A]n applicant seeking withholding of removal faces 'a more stringent burden than what is required on a claim for asylum.'" *Umana-Ramos v. Holder*, 724 F.3d 667, 674 (6th Cir. 2013) (alteration in original) (quoting *Urbina-Mejia v. Holder*, 597 F.3d 360, 365 (6th Cir. 2010)). In addition to establishing the elements of asylum, the withholding of removal

---

[3] Aviles-Solano does not raise any challenges to the IJ's determination that she is not eligible for CAT protection, nor does she challenge the BIA's determination that she waived her arguments for CAT protection before it. Because Aviles-Solano has not raised her CAT protection claim on appeal, it is abandoned, and we do not consider it. *See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018).

applicant must also demonstrate a "clear probability of persecution" in her country of origin. *Vasquez-Rivera*, 96 F.4th at 907 (quoting *INS v. Stevic*, 467 U.S. 407, 430 (1984)).

### B. Particular Social Group

Because the INA's definition of "refugee" hinges on membership in a protected category, such as a PSG, the first determination necessary is whether Aviles-Solano was a member of a protected category, here a PSG, under the statute. *See Umana-Ramos*, 724 F.3d at 671. "Where, as here, the BIA issued a separate opinion, rather than summarily affirming the IJ's decision, we 'review the BIA's decision as the final agency determination. To the extent the BIA adopted the immigration judge's reasoning, however, [we] also review [] the immigration judge's decision.'" *Id.* at 670 (alterations in original) (quoting *Hachem v. Holder*, 656 F.3d 430, 437 (6th Cir. 2011)). We review the IJ's and the BIA's legal conclusions de novo and their factual findings under the substantial evidence standard. *Vasquez-Rivera*, 96 F.4th at 907. Whether a PSG is cognizable is a question of law, and decisions regarding the underlying elements are questions of fact. *Id.* at 908. Aviles-Solano contends that she is a member of three cognizable PSGs: El Salvadoran citizens who refuse to pay the Barrio 18 gang's extortion demand; El Salvadoran citizens who are the mothers of children who refuse to join the Barrio 18 gang; and El Salvadoran citizens who live in Barrio 18 gang territory and have children that attend school in the MS-13 gang territory.

The INA does not define the term "particular social group," but the BIA and our cases have interpreted and articulated its three requirements: a common, immutable characteristic, social visibility, and particularity. *See Zometa-Orellana v. Garland*, 19 F.4th 970, 978 (6th Cir. 2021). First, a PSG is a group "composed of individuals who share a 'common, immutable characteristic." *Umana-Ramos*, 724 F.3d at 671 (quoting *Urbina-Mejia*, 597 F.3d at 365). This characteristic must be one that the group's members cannot change "or should not be required to change because it is

fundamental to their individual identities or consciences." *Id.* (quoting *Castellano-Chacon v. INS*, 341 F.3d 533, 547 (6th Cir. 2003)). For example, this court found that the group of Honduran "rural landowners or farmers" shared a common, immutable characteristic when the petitioner showed that she "should not be required to change this aspect of her identity to avoid persecution given the demonstrated importance of landownership to her." *Turcios-Flores v. Garland*, 67 F.4th 347, 355-56 (6th Cir. 2023). Such characteristics may not be circularly defined based on the fact that the group members suffer or fear persecution. *Umana-Ramos*, 724 F.3d at 671.

The group must also be both socially visible and particular. *Id.* Social visibility "requires 'that the shared characteristic of the group should generally be recognizable by others in the community.'" *Id.* (quoting *Al-Ghorbani v. Holder,* 585 F.3d 980, 994 (6th Cir. 2009)). Social visibility does not, however, require that the group members be visually recognizable on sight. *Id.* at 672. Next, a group is particular when it can "accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons." *Id.* at 671 (quoting *Al-Ghorbani,* 585 F.3d at 994). Groups that are too broad or amorphous do not meet the particularity requirement. *See Perez v. Garland*, No. 20-4172, 2021 WL 4988351, at *3 (6th Cir. Oct. 27, 2021). For example, the group of "young Guatemalan men between the ages of 15 and 25 who have opposed gang activity and lack protection" is a group "too vague and broad to meet" the particularity requirement because group membership constantly changes as members age in and out. *Id.*

The BIA determines whether the petitioner has asserted a cognizable PSG on a case-by-case basis, *Mazariegos-Rodas v. Garland*, 122 F.4th 655, 665-66 (6th Cir. 2024), and evidence to establish a PSG may include country condition reports, fact and expert witness testimony, press accounts of discrimination, and historical animosities toward the group, *Matter of M-E-V-G-*, 26

I. & N. Dec. 227, 244 (BIA 2014). Whether a specific PSG is cognizable turns on the record of the petitioner's application. *See Mazariegos-Rodas*, 122 F.4th at 665-66. Thus, what may be a cognizable PSG in one asylum application may not be cognizable in another. Our past cases are instructive on what the petitioner must set forth in the record. In *Urbina-Mejia*, we held that a petitioner asserted a cognizable PSG of former members of Honduras's MS-13 gang. 597 F.3d at 366-67. The group had a common, immutable characteristic, because a member would be "forever a former member of that gang." *Id.* at 366. Further, the petitioner established the group's social visibility because he presented expert testimony that he would be recognized as a former MS-18 member if returned to Honduras. *Id.* at 366-67, 367 n.3. The proposed PSG was therefore cognizable.[4]

By contrast, in *Vasquez-Rivera*, this court held that a Salvadoran woman did not assert a cognizable PSG of "family members of persons targeted for gang recruitment whose family is threatened when they refuse to join the gangs[.]" 96 F.4th at 906, 908. On that record, the proposed group did not meet the particularity requirement because it was "replete with generalities," and it did not meet the social visibility requirement because the record did not show that Salvadoran society recognized the group as a socially distinct class. *Id.* at 908. Further, in *Umana-Ramos*, the petitioner's proposed PSG of "young Salvadorans who ha[ve] been threatened because they refused to join the MS gang" was not cognizable because it was not particular, but instead amorphous, and could encompass all Salvadoran youth. 724 F.3d at 674 (alteration in original). The proposed group also did not meet the social visibility requirement, because there was "no evidence in the record suggesting that the group of youths whom the MS gang threatens because of their refusal to join is perceived as a distinct segment of the Salvadoran

---

[4] The court did not address the PSG's particularity requirement on appeal. *See Urbina-Mejia*, 597 F.3d at 366-67.

population." *Id.*; *see also Lopez Sosa v. Barr*, 780 F. App'x 307, 307 (6th Cir. 2019) ("Individuals who refuse to join a gang [in Honduras] do not qualify as a [PSG].").

The BIA concluded that Aviles-Solano's proposed PSGs are not cognizable because they are not socially distinct. That is, "society in general" does not "perceive[], consider[], or recognize[] persons sharing the particular characteristic [in the proposed PSGs] to be a group." We address the cognizability of each proposed PSG on this record in turn.

First, Aviles-Solano pled membership in a group of "El Salvadoran citizens who refuse to pay the Barrio 18 gang's extortion demand." The record does not contain evidence that Salvadoran citizens who refuse to pay the Barrio 18 gang's extortion demand are perceived as a distinct segment of the El Salvador population, so the group is not socially visible. *See Umana-Ramos*, 724 F.3d at 674. Regardless, that proposed group's only common characteristic, that each member suffered persecution in the form of extortion and threats, makes the group circularly defined. The common, immutable characteristic element cannot be satisfied solely by resting on a group's shared harms. *See id.* at 671. Aviles-Solano argues on appeal that this characteristic is immutable because she "cannot change the fact that she did not have $7,000 to give members of the Barrio 18 gang and therefore refused to meet their extortion demands." While a petitioner's inability to change the characteristic is a necessary requirement to show a common, immutable characteristic, it is not sufficient alone. *Id.* The characteristic must also be fundamental to one's identity and not the result of the persecution itself. *Id.* The proposed group does not satisfy the common characteristic or social visibility requirements.

Second, Aviles-Solano argued that she is a member in the group of "El Salvadoran citizens who are the mothers of children who refuse to join the Barrio 18 gang." In prior cases, we have explained that, without sufficient record evidence, the group of "family members of persons

targeted for gang recruitment whose family is threatened when they refuse to join the gangs" is not particular or socially visible. *Vasquez-Rivera*, 96 F.4th at 906, 908. As the BIA concluded, Aviles-Solano fails to identify sufficient record evidence to establish that this group is socially visible. Further, our precedent shows that, on this record, the group is too broad to be considered particular because it could be amorphous enough to encompass all family members of Salvadoran youth who are not in gangs. *See id.* Aviles-Solano argues that the group is particular because, to be a member, "one will have to fit into the [] characteristics." But whether someone fits into the characteristic of being the mother of a child who has refused to join a gang could include most Salvadoran mothers of sons who are not gang members, depending on how one defines "refuse." *See Umana-Ramos*, 724 F.3d at 674. The proposed group does not satisfy the social visibility or particularity requirements.

Aviles-Solano's third proposed PSG is the group of "El Salvadoran citizens who live in Barrio 18 gang territory but attend school in MS-13 gang territory." This proposed PSG does describe with particularity a subset of the Salvadoran population with a common, immutable characteristic: They cannot change—and should not be required to change—where they live and attend school. *See id.* at 671. Further, the group is described with particularity because it is sufficiently defined as a discrete class of persons. *See id.* On this record, however, Aviles-Solano has not shown that the group is socially visible. Aviles-Solano does not identify in her appeal brief record evidence such as country conditions reports, news articles, fact and expert witness testimony, or historical information indicating that students who cross rival gang boundaries between home and school are perceived as a distinct segment of the Salvadoran population. Instead, Aviles-Solano relies on broad reports of gang violence against vulnerable populations throughout El Salvador. While a future asylum applicant might provide record evidence showing

the social visibility of this PSG, these reports alone are not enough to demonstrate that Aviles-Solano's third proposed PSG is socially distinct, though it is particular and shares a common, immutable characteristic.

Aviles-Solano urges us to reverse the BIA's decision that each group is not socially visible because "both the Barrio 18 and MS-13 gangs have thousands of members located through El Salvador," and "[t]he network of gang members can easily share and spread information on who has refused to comply with their extortion demands or who has refused to join their gang." Petitioner Br. at 18. But the social visibility analysis requires us to look beyond whether the group members are visible to the persecutors—in this case, the gang members. *Zaldana Menijar v. Lynch*, 812 F.3d 491, 499 (6th Cir. 2015). Instead, the group members must be distinct in Salvadoran society generally. *See id.* The record here is inadequate to make the showing of social visibility.

The BIA also concluded that Aviles-Solano's proposed PSGs do not meet the nexus requirement because there was no connection between her extortion and her membership in the proposed PSGs. Aviles-Solano challenges this conclusion, arguing that a mixed motive analysis applies and that the group membership was at least one reason for the gang's extortion. Because the BIA was correct in finding that Aviles-Solano's proposed PSGs were not cognizable, we need not consider the nexus argument on appeal.

### III.   CONCLUSION

For the foregoing reasons, we **DENY** Aviles-Solano's petition.